SUSAN INGLEHART, APPELLEE, v. OMAHA & COUNCIL BLUFFS STREET RAILWAY COMPANY, APPELLANT.

FILED FEBRUARY 27, 1914.    No. 17,397.

1. **Carriers: INJURY TO PASSENGER: EVIDENCE OF CUSTOM.** The evidence was conflicting as to whether the defendant's car had stopped at a certain place before the plaintiff had attempted to alight therefrom. The defendant furnished evidence tending to show that this was not the regular nor proper stopping place, and that the car was not stopped there on this occasion, but plaintiff attempted to alight from the car while it was in motion. *Held*, That evidence that defendant's cars frequently stopped to allow passengers to alight at the place specified was competent as bearing upon the probability of plaintiff's evidence that the car had stopped before she attempted to alight, and that such evidence should be considered by the jury, although it was not sufficient to prove a uniform and established custom.

2. **Appeal: INSTRUCTIONS: NONPREJUDICIAL ERROR.** In such case it would be erroneous to instruct the jury that they must determine the competency of such evidence, but the error would be without prejudice to the defendant. To reject such evidence would be prejudicial to the plaintiff only.

APPEAL from the district court for Douglas county: WILLIAM A. REDICK, JUDGE. *Affirmed.*

*John L. Webster* and *W. J. Connell,* for appellant.

*Brome & Brome* and *W. C. Fraser, contra.*

SEDGWICK, J.

The plaintiff recovered a judgment against the defendant in the district court for Douglas county for damages caused, as she alleged, by the negligence of the defendant, whereby she was thrown down and injured in attempting to alight from one of defendant's cars. The plaintiff notified the conductor that she wanted to leave the car at the intersection of Fortieth and Hamilton streets, in the city of Omaha, and she alleged that defendant stopped the car upon the curve at a point where it was customary and usual to stop for the purpose of permitting passengers to alight therefrom, and that while she was in the act of alighting from the car defendant's servants "suddenly started said car forward, throwing plaintiff to the street." The defendant denied that the car had come to a stop, and alleged that plaintiff "stepped from the running-board to the street while the said car was rounding the curve at Fortieth and Hamilton streets, * * * and before said car had reached the regular stopping place at the far side of said intersection."

The defendant presents two assignments of alleged error in the brief: First. "The court erred in receiving evidence tendered by the plaintiff tending to show that the north-bound cars sometimes stopped while rounding the curve on Fortieth and Hamilton streets for the purpose of permitting passengers to alight therefrom." Second. "It was for the court to decide on the defendant's objections to the admissibility of said evidence whether the evidence was competent, material or relevant. It was error for the court to rule that the evidence was competent, relevant and material, and afterwards instruct the jury that it might or might not attach any weight to the evidence, or

that the jury might decide whether the evidence was rele-
vant or material to any point at issue in the case."

We think that the evidence complained of was properly
received. The principal question was whether the car
was stopped upon the curve. The plaintiff contended that
she was attempting to leave the car while the car was
stopped, and the defendant answered with the contention
that the car was not stopped on the curve, and that plain-
tiff was attempting to alight while the car was in motion.
There was a sharp conflict in the evidence upon this dis-
puted point. While evidence that the car frequently
stopped at that point for the purpose of allowing passen-
gers to alight would not of itself prove that it did so
upon this occasion, still in view of the defendant's evi-
dence that the car had not yet arrived at its proper stop-
ping place, the evidence complained of had a bearing upon
the probability of plaintiff's evidence that the car had
stopped at the point when she attempted to alight. See,
*Norfolk & A. T. Co. v. Rotolo*, 195 Fed. 231, and cases
there cited.

The instruction complained of in the second assign-
ment of error was as follows: "Whether or not the cus-
tomary place of stopping the cars at Fortieth and Ham-
ilton streets was at the entrance of the curve, at some
point on the curve, or beyond the curve on Hamilton street,
is not material in this case upon the question whether or
not defendant was negligent. * * * But the evidence
upon the question of the customary stopping place may
be considered by you with the other evidence in determin-
ing whether or not the car stopped before plaintiff at-
tempted to get off, if in your judgment it has a bearing
upon that question." If we should consider that this in-
struction submitted to the jury the question of the com-
petency of the evidence, which is by no means clear, still
the instruction was without prejudice to the defendant.
If the jury rejected the evidence "of the customary stop-
ping place" as having no bearing upon the fact in dis-
pute, this might be prejudicial to plaintiff, but not to de-
fendant. It is suggested that the evidence was not suffi-

cient to prove the custom. It is said that "to establish custom of stopping on the curve the evidence ·must show that such habit of stopping upon the curve was general and uniform." The rule as thus stated is not applicable to this case. There was evidence from which the jury might find that the defendant's cars were generally stopped upon the curve when passengers along Fortieth street desired to leave the car at Hamilton street, and, if they so found, that fact would tend to corroborate plaintiff's evidence.

There are no errors assigned in the brief which require a reversal, and the judgment of the district court is

AFFIRMED.

FAWCETT, J., dissenting.

I cannot give my approval to instruction No. 8, given by the court, and I think the verdict is so contrary to the great weight of the evidence that the case should be submitted to another jury.

HAMER, J., dissenting.

The plaintiff and appellee, Susan Inglehart, fell and received a severe injury while alighting from a street car at the intersection of Fortieth and Hamilton streets in the city of Omaha. She brought an action to recover damages for the injury so received, and obtained a judgment against the Omaha & Council Bluffs Street Railway Company for $3,000. The negligence charged against the street railway company was the starting of the car while the plaintiff was in the act of alighting. A short review of the evidence may enable us the better to consider the two points which we conceive to be in the case: (1) Whether the testimony tending to establish that the cars stopped on other days before the injury on the curve, or anywhere around the curve, and before the far side was reached, is material touching the alleged negligence of the company. (2) Whether instruction No. 8, given to the jury upon the court's own motion, was prejudicial to the defendant.

The plaintiff testified that she was 57 years old; that she resided at No. 3861 Charles street; that she became a passenger on one of the defendant's cars on Sixteenth and Dodge streets, northwest bound, to get off at Fortieth and Hamilton streets; that before reaching the street intersection she motioned the conductor and told him that she wished to get off at Hamilton street and Fortieth; that when the car came up to Fortieth street it stopped on the curve, and that she got up and walked across the car to the running-board, stepped out on the running-board, "and, as I was making my first step to the ground, they started the car, and I fell." The plaintiff was permitted to testify that the cars stopped as often on the curve as "they did down straight. They had no regular place of stopping when they came down on the line. I have got off just as often on that curve as I have down the other way." She then testified that she had frequently left the cars when they stopped on the curve at the place where she left on the day she was injured. On cross-examination she testified that the usual place for the car to stop was after it got around the curve, but that it stopped just as often on the curve as it did when it got around it. As a result of the fall her left hip bone was broken, and she was put to expense, and was confined to her bed for about twelve weeks, and afterwards was compelled to use crutches.

Price Warren, a witness for the plaintiff, testified that he saw the accident, and that, when the plaintiff stepped out onto the running-board, the car started and threw her off. Three other witnesses for the plaintiff seem to have seen the accident, but they were unable to testify to more than the fact that they saw the car come to a stop and saw the plaintiff lying on the pavement. Dr. David A. Medders testified that he saw the plaintiff get off the car, and that she did not get off until the car came to a stop, but he did not see her fall.

The defendant company produced a number of witnesses who testified to facts more or less material. Mrs. Nelson testified: "We were going very slow, and she steps

off the car and fell." David M. Potter testified that the conductor said to the plaintiff: "Wait until the car stops." Mrs. Curry testified that the conductor "hollored out, 'Wait a minute;' " that the plaintiff halted, and then she made no other attempt, and the car was still moving, and he called out the second time, "Wait a minute;" that "she had made a step off, and down she fell." Charley Haverstroh testified that, when the car was just entering "on them cobble stones, why, she kind of stepped on the running-board, and then she fell kind of backwards;" that the car was moving when she went off, and that it had *not stopped up to that time.* W. A. King, the motorman, testified that he saw her on the running-board just about to step off, and that he saw her step off; that the car was moving at the time, and that it had not stopped up to the time that she stepped off. J. A. Rogers testified that he saw her get off the car; that the conductor said to her, "Wait until the car stops;" that she was then standing on the running-board of the car; that the car had not stopped up to that time, and that it was going very slowly. Stafford J. Flowers, the conductor, testified that he said to the plaintiff, "Wait a minute, please;" that she then stopped, and that in about half a minute "she made another step and stepped right off." Mrs. Eva Wagner testified that the north-bound cars were in the habit of stopping to discharge passengers "on the curve." Mrs. Mabel Lavender testified that the cars stopped *anywhere* around that curve—as often on the curve or south of it as west of it. William G. Davidson testified that the cars were in the habit of stopping "on that curve and over the curve and on this side of the curve." Mrs. Minnie Godenschwager testified that the cars stopped "at the curve and beyond, and sometimes before. I have got off at all three places at different times." Mrs. L. W. Damon testified that she got off "just as often before the car came to the curve as beyond the curve, or on the curve." Mrs. Frederick Godenschwager testified that the car stopped at different places. "I have got off myself at different places,

before the curve, and after the curve, and the regular stopping place, a good many times."

To the testimony of the witnesses concerning the fact that the car frequently stopped on the curve for the purpose of permitting passengers to alight, the defendant objected, on the ground that the testimony was irrelevant, immaterial and incompetent; that said testimony had a tendency to divert the minds of the jury from the real act of negligence, that is, whether the car started while the plaintiff was in the act of alighting from the car. These objections were all overruled.

It is uncontroverted that the car was *going when the woman got off.* If her fall is to be attributed to the fact that the car was going when she got off, then we are brought to consider whether the car had simply *kept on going,* or whether it had *actually stopped* and *then started again.* If it was a custom to stop at the place where the plaintiff got off, and that fact was proved, it would tend to corroborate the plaintiff's testimony that the car did stop just before she got off, because it would make it appear to be probable. If the evidence shows that it *sometimes* stopped there, or in that immediate vicinity, then, on the doctrine of chances, that would make it seem probable that it may have stopped there *this* time, and, owing to the uncertainty of the direct testimony, which is in conflict, this is of some slight probative value. If of such value, it was right to admit it. Unless the car stopped, it could not have started again. So it is most material to show that it did stop. If there is a failure to establish the necessary fact that the car stopped, then the plaintiff cannot recover. It is the stopping of the car and its starting up again, if shown, that together put the defendant on trial for negligence. In *Norfolk & A. T. Co. v. Rotolo,* 195 Fed. 231, it is held that testimony of custom to stop cars and discharge passengers at a *particular point* is admissible, as it tends to prove that the car did stop at that point. It was therefore not error to permit the introduction of evidence that the car had before been allowed to stop on the curve.

The eighth instruction is as follows: "Whether or not the customary place of stopping the cars at Fortieth and Hamilton streets was at the entrance of the curve, at some point on the curve, or beyond the curve on Hamilton street, is not material in this case upon the question whether or not defendant was negligent; the question for your decision is whether the car upon which plaintiff was riding came to a full stop at some point before plaintiff attempted to step to the street (if it did so stop), and whether it started up again while plaintiff was alighting, and she was thereby injured. If you answer all these questions in the affirmative, your verdict should be for the plaintiff; if plaintiff attempted to alight while the car was in motion, she cannot recover, and your verdict should be for the defendant. But the evidence upon the question of the *customary stopping place* may be considered by you with the other evidence in determining whether or not the car stopped before plaintiff attempted to get off, *if in your judgment it has a bearing upon that question.*" Up to the last sentence we do not discover anything wrong with the foregoing instruction; but the last sentence seems to give a wide, rough and uncultivated field of action to the jury. It is in the highest degree stimulating. That sentence seems to minimize the evidence touching where "the customary stopping place" may have been, but it is one of those soft coddling sentences calculated to do an infinite amount of harm. When the jurors are told that they are given permission to exercise their judgment as to whether certain evidence bears upon the case, the learned judge accidently gave to the jury the permission to pass on a *legal question,* and to exercise their knowledge as lawyers or their imagination as men; the knowledge they did not have. Their imagination was probably unlimited, and certainly untrammeled. It was for the learned judge to say whether this evidence concerning the customary stopping place had a bearing upon the case. This was one of the very material things in the case, and to say to the jury that they might determine about it was to abdicate the place of judge and give it to the jury.

95 Neb. 29

It cannot be said that such an error as this may not have prejudiced the rights of the defendant. *Boston & A. R. Co. v. O'Reilly,* 158 U. S. 334. Nor is it necessary to be able to see what the effect of this instruction may have had upon the jury. It was clearly the right of the defendant to have his case go before the jury without being encumbered with illegal or irrelevant matter, and this instruction told the jury that they might consider this matter if they thought it had a bearing in determining whether or not the cars stopped before plaintiff attempted to get off. They were to make *any such use of it as they saw fit.* This was error of a prejudicial character. *Mexia v. Oliver,* 148 U. S. 664.

This instruction, in effect, said to the jury: "This evidence is material. You are authorized to treat it as such, and you will say just how far it shall control your action and what you will do with it." In *Odell v. Story,* 81 Neb. 442, the second paragraph in the syllabus reads: "A judgment will be reversed for the reception of improper evidence where it is probable that such improper evidence influenced the verdict of the jury."

In *National Biscuit Co. v. Nolan,* 138 Fed. 6, it is said in the body of the opinion: "Error presumptively works a prejudice to the party against whom it was committed, and this presumption is only overcome when it appears beyond a doubt that the error challenged did *not* prejudice and *could not* have prejudiced the complaining party." Very many authorities are cited in the opinion in support of this proposition. See, also, *Garthwaite v. Bank of Tulare,* 123 Cal. 132; *Inhabitants of Wayland v. Inhabitants of Ware,* 109 Mass. 248; *Langston v. Southern E. R. Co.,* 147 Mo. 457; *United States v. Honolulu Plantation Co.,* 122 Fed. 581; *Gilmer v. Higley,* 110 U. S. 47.

It is said in the brief of counsel for the defendant: "There is affirmative evidence in the case at bar that said testimony was prejudicial, by reason of the fact that the jury accepted the testimony of the plaintiff and one other witness, coupled with this incompetent and irrelevant testimony, as proof that the car started while plaintiff was

in the act of getting off, as against the testimony of seven witnesses that the plaintiff got off the car before it had come to a stop, and that the car did not start while she was in the act of getting off." No one may say, and perhaps no one may know, whether it was the evidence or instruction that brought about the verdict. Although the evidence seems to be of very slight probative value, so long as it has *any* value there is perhaps no good objection to its introduction. It made the woman's testimony seem probable. It made a different fact happening at a different time evidence of that which is claimed to have happened today. That the car was stopped and then started again was the material fact. Where it stopped was only an incident, but part of a possible truth tending to corroborate the plaintiff's statement. We observe the most objection to the instruction. It said to the jury that they could determine what bearing the evidence had touching the customary place of the car stopping. That was an important factor in the case. Whether the car was *stopped* and *then started again* when the woman attempted to get off was the main question. No one may know what the jury concluded about it. We do know that the jury rendered a verdict against the defendant. Who may say that the jury may not have said to themselves: "Of course, that means that the car stopped before the plaintiff attempted to get off. We are to determine what bearing the evidence touching the question of the customary stopping place has in the case, and we are going to determine that it shows that that car was stopped and then started again, and we are going to do it under this instruction which allows us thus to do what we like." By this instruction the judge seems to have turned the jurors loose to do what they saw fit about the car stopping on the curve at prior times. The judge said, in effect: "You may ignore that evidence if you want to." But at the same time he said, in substance: "If you believe that that evidence has a bearing on the case, you will consider it." When he let the evidence in he, by that act, said to consider it. When

he gave the instruction he said: "Do as you like." His conduct is irreconcilable. It must have confused the jury.

When the court overruled the defendant's objections and held that the jury might consider the evidence relating to the usual stopping place, and so instructed the jurors, then that evidence was before them, in a way, for all purposes, and *especially for the purpose of emphasizing that the car stopped before the plaintiff got off, and therefore that it must have started up again.* When the jury were told that they might consider the evidence touching the stopping of the car before it reached the far side, if they thought it had a bearing on the case, was that in effect telling them that because they so thought, if they did so think, they might find for the plaintiff? Could the jury fail to interpret it in any other way? Was this not equivalent to telling the jury that the defendant was negligent? And therefore, inferentially, did not the court tell the jury that the defendant was liable for the damage sustained? We think it follows that the court erred in the form and substance of the instruction which it gave to the jury. They were licensed by the instruction to give it such a bearing, and as much of a bearing, as they liked. "But in trials by jury it is the province of the presiding judge to determine all questions on the admissibility of the evidence to the jury, as well as to instruct them in the rules of law, by which it is to be weighed. Whether there be any evidence or not is a question for the judge; whether it is sufficient evidence is a question for the jury." 1 Greenleaf, Evidence (16th ed.) sec. 81e.

In *Nickey v. Zonker,* 31 Ind. App. 90, the court said: "The question of whether the evidence is material is for the court, and all the evidence which the court decides is material must be considered by the jury with due regard to the credibility of the witnesses. * * * The question of whether evidence is material is a question of law, the determination of which, in a civil action, is solely with the court."

In *Clark v. McAtee,* 227 Mo. 152, 190, an instruction, which read as follows, was declared erroneous: "And if

the jury find from the greater weight of all the *competent evidence* in the cause that said allegations of plaintiff are correct, then their verdict must be for the plaintiff." The court said: "The hornbooks lay down the rule to be that it is the province of the court, and not that of the jury, to determine the competency of evidence offered; and that, when evidence is admitted, it is the duty of the jury to consider and weigh and give to it such credence as they may deem proper; but the jury has no right to decide upon the competency of testimony admitted by the court, as this instruction clearly authorized it to do."

In *Ball v. Skinner*, 134 Ia. 298, 310, an instruction was so phrased as to leave it to the jury to decide whether they would attach any weight to certain evidence which the court had ruled to be material and relevant. The court said: "Without taking time to discuss these propositions, we will say that the materiality of the facts is a matter for the court alone, and the jury is bound to assume that any fact or circumstance allowed in evidence by the trial court is material and entitled to consideration."

In *Slappey v. Sumner*, 136 Ga. 692, the court referred to certain evidence, and said: "If any admissions have been testified to before you as having been made as to any mat- ters material to the issues in this case, I charge you that admissions should be scanned with care and are to be con- sidered, if at all, by you in determining the truth or falsity of the issue to which such admission may or may not re- late." It was said the use of the words "if at all" might have had a tendency to mislead the jury into the belief that they might have arbitrarily declined to consider the admission, and it would have been better to omit them.

If the testimony was legally competent, yet nevertheless the defendant was prejudiced by instruction No. 8. To hold otherwise would be equivalent to saying that the court might instruct the jury that they might or might not con- sider competent or relevant testimony, just as they pleased. Of course, the result of such instructions would be to nul- lify and render useless the ruling of the court that the evidence was competent and relevant, and it would be

equivalent to saying to the jury: "You are the judges of the law, as well as of the facts." It is unfortunately true that a modest judge is often deferential to the jury and inclined to flatter the jurors touching the responsible position which they hold. He should not be allowed to do this at the expense of the litigant, however tempting the tendency may be to say sweet things to willing listeners.

While the district court was seemingly desirous of minimizing the effect of what it said in the last sentence of instruction No. 8, no one may know the extent to which this sentence influenced the jury. Jurors are often men of character and force in the community, and sometimes they are ready to go a long distance around the judge if they have a little excuse to do so. In this case the sentence in question gives them the excuse. We do not feel like indulging the presumption that the judgment must be right notwithstanding an erroneous and misleading instruction.

In *Borkenstein v. Schrack*, 31 Ind. App. 220, it was said in the body of the opinion "that * * * erroneous instructions are presumed to have had an influence on the jury, *until the contrary* is shown."

In *Royal Neighbors of America v. Wallace*, 66 Neb. 543, the third paragraph in the syllabus reads: "Where, in an action upon a life insurance policy, by the instructions of the court the jury are left at liberty to disregard all representations as immaterial to the risk, it is prejudicial error, requiring the reversal of the case." The assured in the application had answered the question whether he had ever had hemorrhages by saying "No." The court in an instruction submitted to the jury whether this representation was "material to the risk."

The plaintiff and one of her witnesses testified that the car stopped on the curve, and that the plaintiff then undertook to step from the car, which immediately started again and threw her to the ground. Seven witnesses testified for the defendant, that the car did not stop, that it continued to move slowly, and that the plaintiff stepped from the care while it was moving. Other witnesses testi-

fied on behalf of the plaintiff, that on prior occasions they had seen the car stop on the curve, and before it reached the curve, and after it reached the curve, and before it reached the far side, although the far side was the customary stopping place. Of course, the purpose of this last evidence was to corroborate the probability of the truth of plaintiff's statement that the car had stopped on the curve and then started again just as she stepped off. When the evidence touching this matter was admitted by the court, it was, by the mere fact of such admission, declared to be competent; but when the jury were told in instruction No. 8 that the evidence "upon the question of the customary stopping place may be considered by you with the other evidence in determining whether or not the car stopped before the plaintiff attempted to get off, *if in your judgment it has a bearing upon that question,*" the jury were left by the court to declare whether this evidence was competent or incompetent, and they did this at their own election, and therefore this instruction must have confused them; it clearly surrendered to the jury the question of determining the law of the case for themselves and applying it as they saw fit, and it was therefore erroneous and prejudicial.

I am of the opinion that the verdict is against the weight of evidence, and, in any event, the trial court abdicated the place given it by our laws and our method of procedure and gave the jury unbridled license.