LANGSTON, Appellant, v. SOUTHERN ELECTRIC RAILROAD COMPANY.

Division One, December 23, 1898.

1. Practice: NEW TRIAL: FOUR PREVIOUS TRIALS NO BAR. A party should not be denied a new trial on the ground that the case had already been tried four times, if prejudicial error was committed against him on the last trial.

2. **Negligence:** QUALIFICATION OF MOTORMAN: OPINION. It is error to permit a witness to state that in his *opinion* the motorman in charge of the car on which plaintiff was riding at the time he was injured, was in every way competent and one of the best on the road. He could state the facts showing competency, but not his opinion.

3. **Practice:** ERROR: PRESUMPTION. Error is presumptively prejudicial to the party against whom it is committed.

*Appeal from Gasconade Circuit Court.*—HON. RUDOLPH HIRZEL, Judge.

REVERSED AND REMANDED.

H. A. LOEVY for appellant.

(1) The court erred in admitting irrelevant, immaterial and incompetent evidence. Mr. Allen, being examined by appellee,. testified: "I am superintendent of defendant in charge of motorneers and conductors, and of instructing motorneers in the way of handling the cars. I hired Mr. Leslie. I had been superintending nearly 4 years before this accident happened. Q. Are you able to state as to his competency or not? A. Yes, sir. Q. And are you able to state whether on that day in September he was competent or not? Objected to as incompetent, irrelevant and immaterial. Court: You may answer. To which ruling plaintiff then and there duly excepted. A. He was competent in every way; he was one of the best motormen on the road." Boettger v. Iron Co., 136 Mo. 536; King v. Railroad, 98 Mo. 235; Koons v. Railroad, 65 Mo. 597; Eubank v. City of Edina, 88 Mo. 655; Gavisk v. Railroad, 49 Mo. 276; Gutridge v. Railroad, 94 Mo. 472. (2) The motion for new trial was not overruled because

the various grounds therefor were not deemed to be well taken but solely because there had been four trials and the trial court did not think appellant ought to have any more. There is no foundation in law for this ruling. R. S. 1889, sec. 2241.

Lubke & Muench for respondent.

(1) Appellant's objection to the evidence as to Leslie's competency as motorneer is not valid. Where evidence is admissible for some purpose, a general objection that it is incompetent and irrelevant is rightly overruled. Jamison v. Bagot, 106 Mo. 240; Seligman v. Rogers, 113 Mo. 642; Connor v. Black, 119 Mo. 126. Leslie was about to be introduced as an expert to testify as to the effect of turning on electric currents, and the possibility of creating a jerk under the circumstances surrounding this accident. His experience and competency could certainly be as well proven by the man whose business it was to instruct and to daily observe him, as by Leslie himself. [Lawson on Expert Ev. (Ed. 1883), p. 236; Laros v. Com., 84 Pa. St. 200.] Again, one of the charges in plaintiff's petition is that his injury was caused by the "incompetency" of this motorman. Thus the general competency of Leslie was made an issue in the case by appellant himself, and it could be proven by other witnesses, competent to judge thereof. It has been so held by this court with regard to medical experts, and the same rule should apply here. Vanhooser v. Berghoff, 90 Mo. 498. (2) It is not material as to what reasons the trial court gave when overruling the motion for new trial. The statute requires the judge merely to state the grounds upon which such a motion may be sustained. If, on the record, the ultimate action of the court in denying a retrial is found to be correct by this court, then the ruling will be affirmed,

even though this court might disapprove of every reason assigned by the lower court. McShane v. Sanderson, 108 Mo. 316.

WILLIAMS, J.—This suit is for $10,000 damages on account of an injury alleged to have been sustained by plaintiff, while a passenger on one of defendant's cars, in consequence of the incompetency and negligence of the persons in charge of the same. The accident occurred on the eighteenth of September, 1892.

The case has been tried four times. The jury failed to agree on two occasions, and upon the third, plaintiff obtained a verdict for $2,500. This was set aside as excessive by the learned judge who presided at the trial. The last time the case was heard, $5 were awarded plaintiff, and, from a judgment in his favor for that amount, he has appealed to this court.

A reversal is asked upon two grounds, namely, the admission of improper evidence upon defendant's part; and the inadequacy of the damages assessed.

The substance of the petition is that plaintiff was a passenger on one of defendant's street cars; that, as it approached the intersection of Sixth and Elm streets, going north, he arose from his seat, and gave a signal to the conductor to stop, which the conductor saw; that plaintiff prepared to get off as soon as the car should stop, but that it was not stopped on the north crossing, at the intersection of said streets; that, when the car was at said crossing, it was "suddenly jerked, pulled or moved forward by the carelessness, recklessness, incompetency and negligence of the motorman with such force and violence that plaintiff was knocked off and out of said car, so that he fell on the stone pavement of Sixth street" and was seriously and permanently injured.

The answer contains a general denial; and, likewise, a plea of contributory negligence, upon which issue is joined by the replication.

Plaintiff's testimony tends to prove these facts:   He was a merchant residing in West Plains and was temporarily in St. Louis on the eighteenth of September, 1892.   He got on one of defendant's street cars, intending to ride to the end of the line.   The conductor passed along and collected his fare.   Plaintiff, as the car approached Elm street, thought he recognized an acquaintance on the sidewalk and determined to get off to speak to him.   He arose from his seat and signaled the conductor to stop, which the latter saw. Plaintiff did not hear the bell, if it was rung in response to the signal from him.   He says the conductor was looking directly at him when he indicated his desire and purpose to get off.   There were two cars together.   Plaintiff was on the second one, or trailer, which was an open summer car. He moved to the side, so as to be ready to step down from the car as soon as it should stop.   He was standing upright and not holding to anything.   The cars were going north and did not stop on the north crossing at the intersection of Elm and Sixth streets, but upon the contrary they started forward more rapidly with a *sudden, quick jerk,* which was very severe, and by reason thereof, plaintiff was thrown out upon the granite rocks in the street.   The cars were moving rapidly at the time the accident occurred, which was about 3 o'clock in the afternoon.   Plaintiff's arm was broken and he was otherwise bruised and injured.   Two other witnesses corroborated his statement that the cars dashed or moved forward with a *sudden jerk.*   No one saw him fall.   He was found lying on the street and was helped up and then went to a neighboring drugstore and a physician was called, who advised him to go to the "City Dispensary," where he could receive more satisfactory treatment, which he did.   He was confined to his bed for a week and had to carry his arm

in a sling from the time of the injury until in the early part of December following. He testified that he suffered severe pain from the injury and that at the time of the last trial, which was three years after he was hurt, he was unable to use his arm for any manual labor. He paid one physician for treating him $40, and another $40 or $42 and spent $5 or $10 for medicines.

This is a sufficient outline of the case made by plaintiff for the purpose of disposing of this appeal. Further details would throw no light upon the questions of law, which we are called upon to decide.

The testimony introduced by the defendant put an entirely different phase upon the matter. It was to the effect that plaintiff stepped or jumped from the car while in rapid motion, without any request to the conductor to stop the same, and that he was hurt in consequence of his own imprudence and carelessness, and so stated shortly after the accident; and, further, that his injury was aggravated by improper treatment; that, if the bone had been properly set, he would have been well within four weeks and no permanent harm would have resulted. The conductor did not see the plaintiff fall and knew nothing of the occurrence, nor did the motorman.

Defendant further introduced evidence tending to show that the car was moving up grade at the time, and was in rapid motion, and that it *could not* have been started forward with a *sudden jerk,* and that it was impossible under the circumstances for this to have been done. The motorman was called as a witness, and was examined concerning the possibility of moving the car in the manner stated by plaintiff and his witnesses. He said there might be a jerk if the car was not running fast, but not if it was in rapid movement. After he left the stand, and had been fully examined upon this subject, as well as to his recollection about the movements of the car at the time of the accident, defendant's manager

was called by defendant.    He testified as an expert, that the
car could not have started to go faster, with a *sudden jerk,*
if it was moving rapidly before, and that this was an impos-
sibility; that the increase of speed would be gradual under
such circumstances.    During his examination he stated that
he hired the motorman who has just testified.    He was then
asked.    "Q.    Are you able to state as to his competency."
A.    "Yes sir."    Q.    "And are you able to state whether
on *that day in September* he was competent or not ?"    This
was   objected   to   by   the   plaintiff.    The   objection   was
overruled.    Witness   answered:    "He   was   competent   in
every way; he was one of the best motormen on the road,"
and plaintiff saved an exception to the admission of this evi-
dence.

The plaintiff in rebuttal denied that he had ever said
that he jumped or stepped off the train.

No complaint is made of the instructions under which
the case was submitted to the jury and they need not be
noticed.

A verdict was returned in plaintiff's favor on the
thirteenth of September, 1895, for $5, and on the fourteenth
of that month he filed his motion for a new trial, on the
ground that the damages assessed by the jury were grossly
inadequate, and that it was apparent that the verdict was
the result of partiality or prejudice; and because the court
erred in admitting improper evidence in behalf of defendant.

The abstract states that "the motion was overruled
December 9, '95, for the reason that the judge was of the
opinion that plaintiff should not be permitted further to take
up the time of the court, jurors, or witnesses, after having
had four trials, to which order and ruling plaintiff at the
time duly excepted."

A bill of exceptions was filed by plaintiff and in due
time his appeal to this court was perfected.

I.    We do not think that plaintiff should be precluded

from a new trial, if prejudicial error was committed against him in the rulings of the court upon the last hearing, notwithstanding the case may have been *four* times tried. The fault was not attributable to him, and he should not be made to suffer on account thereof. Numerous retrials of a case are doubtless annoying, as well as troublesome, but the courts have no power to refuse to hear litigants on that ground alone. No discretion is given to us, or to the trial courts in that behalf. There were two mistrials in the case, and plaintiff obtained a verdict upon the third, which was set aside. Neither this court nor any of the other courts of the State can decline to hear a cause on account of the fact that it may be objectionable "to the jurors, the court or to the witnesses" to again give their attention to it. In McShane v. Sanderson, 108 Mo. 319, this court said: "Recently it was said: 'We are of the opinion that this statute (referring to the statute concerning new trials) puts no limits to the number of new trials a circuit judge may grant either party when the new trials are granted on account of errors committed by him in giving or refusing instructions or in admitting or rejecting evidence.' [State ex rel. v. Horner, 86 Mo. 71.] This must be the correct construction of the statute; for otherwise we must take the awkward position that a circuit judge can not correct his own errors made on a second or subsequent trial."

Plaintiff here has never asked for a new trial before and none has ever been granted upon *his* application, and, in addition the motion now being considered is not grounded alone upon the allegation that the verdict is against the evidence, but is based upon errors of law as well.

The courts should not be "weary in well doing." A litigant who complains of adverse rulings is entitled, *as a matter of right,* to have his motion for a new trial considered *upon its merits,* without reference to the number of previous mistrials or of retrials at the instance of the other party.

But notwithstanding the erroneous view taken by the court of *this* matter, we can not enter a judgment of reversal unless error is found in the proceedings.

2.  The court permitted defendant's manager, over plaintiff's objection, to give to the jury his *opinion,* that the motorman in charge of the car when plaintiff was hurt was *in every way competent* and one of the *best* on the road. The purpose of this evidence was of course to rebut the charge of negligence made in the pleadings, and which plaintiff's testimony tended to support, and to show that it was improbable that the car was suddenly jerked forward by any *improper* action of *said* motorman. If his competency was to be passed upon by the jury, they should have been furnished with *facts* upon that subject, and not the mere *opinion* of the witness.  The experience of the motorman, his opportunity for familiarizing himself with the work and learning the method of performing the same, and the length of time that he had been engaged in that position would have been proper for that purpose.  The witness did not confine himself to the facts but was permitted to venture his *own opinion* that the motorman was *fully qualified,* and this went to the jury with the indorsement of the court, that it was proper evidence for their consideration in reaching a verdict in the case.  BRACE, P. J., in Boettger v. Scherpe and Koken Architectural Iron Co., 136 Mo. 536, declared: "The court committed no error in refusing to permit defendant's superintendent to give his *opinion* as to whether deceased was *competent* to select the lumber for the scaffold in question. That was the very issue the jury were called upon to try, upon the facts and evidence in the case.  He was permitted to testify to all the facts within his knowledge, touching the question of deceased's experience in respect to the subject of inquiry, but it would have been improper to have permitted him to go further and give his own opinion upon those

facts." Also Gutridge v. Railroad, 94 Mo. 468; Teerpenning v. The Corn Exchange Ins. Co., 43 N. Y. 279.

In Rogers on Expert Testimony, section 17, in discussing the proper inquiries to show the *competency* of one offered as an *expert,* the rule is laid down, that, upon the preliminary examination, the witness should be asked to state his acquaintance with the subject-matter in reference to which his opinion is desired, and what he has done to qualify himself in that particular department of inquiry. But the *opinion* of the witness *as to his competency* is irrelevant, that being a *question* for the *court.* In other words, that, where the purpose is to show the competency of a party, the *facts* from which such an *inference may be drawn,* must be submitted to the court or jury, as the case may be, and not the mere *opinion* of another as to the *deduction* that should be drawn from such facts. [Naughton v. Stagg, 4 Mo. App. loc. cit. 275.]

The respondent does not seriously contend, apparently, that this evidence was admissible in support of the issues tendered by the pleadings, but says that the motorman was offered by it as an expert, and his qualifications in that behalf could be shown by another, as well as by himself, and if the evidence was competent for any purpose, the court did not err in overruling the general objection made to it. There are several reasons why we can not take that view of the matter. The motorman had testified as a witness *before* the objectionable evidence was tendered. Again, as shown above, upon the preliminary inquiry by the court to ascertain the qualifications of an expert, the *facts* should be given and not *opinions* as to such qualifications. But waiving all other questions the evidence could *not* have been offered for *that* purpose. The trial was in September, 1895. The testimony called for the opinion of the manager about the competency of the motorman *on the day of the accident.*

We can not say that the ruling was harmless. Error is

presumptively prejudicial to the party against whom it is committed. It is only where it can be plainly seen from the record that the judgment was clearly right, and that no injury could have resulted to the appellant from an erroneous ruling against him, that his complaints concerning such rulings can be held unavailing. This case is certainly a close one upon the facts. The defendant evidently believed that the objectionable evidence would prove serviceable to its case, and aid it before the jury, otherwise it would not have insisted, over the opposition of plaintiff, that the testimony should go in. It may have had great weight with the jury and materially affected the verdict. We can not say that it did *not* do so. "The evidence, especially where the case is as close as this one is, should be free from such objections." [Gutridge v. Railroad, 94 Mo. loc. cit. 473].

We must therefore remand the cause for a new trial, and it is accordingly reversed and remanded.

All concur.