ARTHUR EMERY v. CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, Appellant.

Division One, December 30, 1922.

NEGLIGENCE: Assumption of Risk: Section Hand: Striking Chisel: Flying Particle. Angle-bars had become attached to the railroad rails by an accumulation of rust, and to remove them a chisel.

shaped like a hatchet or wedge, with a wooden handle, was inserted between them and the iron rails, and held by an assistant while plaintiff struck it with an iron maul or sledge hammer. He charges and testified that at the time he hit the chisel with the maul the assistant looked away and moved the chisel, raising the same, and that in consequence he struck low on the chisel, causing a glancing lick, and this caused a piece of iron to fly into his eye, destroying it. The evidence does not disclose whether the particle that entered his eye was a piece of iron or a particle of rust or whence it came. It was to the effect that whenever a chisel was struck with a maul, whether a straight or glancing lick, particles of rust and iron would fly off, and that the flying of particles was an usual and obvious incident to plaintiff's employment, and there was no evidence tending to show that the direction of the flying chips could be controlled by the kind of blow struck, whether glancing or square. Plaintiff had had ten months' experience in the work and was thoroughly familiar with the manner of performing it. The tools used were not defective. *Held,* that plaintiff assumed the risk or hazard of being hit by the flying particles, and cannot recover.

Appeal from Buchanan Circuit Court.—*Hon. L. A. Vories,* Judge.

REVERSED.

*John E. Dolman* for appellant.

The evidence being undisputed that plaintiff's eye was injured by a particle of iron or steel that "came from the cutting end of the chisel," plaintiff has no case, and defendant's peremptory instruction should have been given. Rogers v. Packing Co., 180 Mo. App. 227; Modlagl v. Iron Foundry Co., 248 Mo. 487, 605; Rogers v. Hammond Packing Co., 167 Mo. App. 49. The flying chips or particles of iron from the angle bars or rail was a usual and obvious risk incident to the business of defendant as it was carried on, which plaintiff assumed when he entered and continued in the employ of defendant. Without remonstrance he voluntarily exposed himself to the hazards of the employment, in effect waived the danger and consented to assume it. Harbacek v. Fulton Iron

Works, 229 S. W. 803; Wexler v. Salisbury, 91 Minn. 308; Johnson v. Brick Co., 276 Mo. 53; Patrum v. Railroad, 259 Mo. 109; Chrismer v. Bell Tel. Co., 194 Mo. 189; Morris v. Pryor, 272 Mo. 350; Powers v. Loose-Wiles Co., 195 Mo. App. 430; Cripple Creek S. & O. Co. v. Souza, 37 Colo. 393; Ill. Cent. Ry. v. Young, 124 Ky. 8; Seaboard Air Line v. Horton, 233 U. S. 492, 58 L. Ed. 1062; Prior v. Williams, 254 U. S. 43, 65 L. Ed. 120.

*Mytton & Parkinson* for respondent.

The court correctly submitted the case to the jury on the proper instructions. Parker v. Railroad, 164 Mo. App. 31; Adams v. Railroad Co., 229 S. W. 790; Crader v. St. Louis & S. F. R. R. Co., 181 Mo. App. 526; Good v. Ferguson & Wheeler Land & Hwd. Co., 107 Ark. 118; Brockmiller v. Industrial Works, 148 Mich. 642; Peterson v. C. B. & Q. R. R. Co., 131 Minn. 266; Brough v. Baldwin, 108 Minn. 239; Swaim v. C. R. I. & P. R. R. Co., 170 N. W. 296.

ELDER, J.—This is an action by respondent to recover damages for the loss of an eye alleged to have been destroyed while assisting in removing iron angle-bars which connected the joints of the iron rails of appellant's main line of track near Amity, Missouri. The accident occurred while respondent was striking the head of a steel chisel, held by another employee of appellant, with an iron sledge or maul. The chisel was shaped like a hatchet or wedge, had a wooden handle, and was being inserted between the web of the rail and the angle-bar in order to drive the angle-bar loose from the rail to which it was attached by an accumulation of rust. While striking the head of the chisel with the maul a piece of metal flew off (the evidence does not clearly disclose from where), striking respondent in the right eye.

The charge of negligence relied upon by respondent and submitted to the jury in the instructions given in his behalf is thus stated in the amended petition:

"That the defendant and its servant, Charles Mc-Vicker, carelessly and negligently held the chisel while it was being struck with a maul in the hands of the plaintiff in an unsafe manner; and carelessly and negligently looked away and caused the chisel which he was holding to be moved as the plaintiff was in the act of striking the chisel with the maul, then and there causing the maul to strike against the head of the chisel and the rail in such a manner as to strike a glancing blow and cause pieces of iron to fly against and into the plaintiff's right eye."

The answer was a general denial, coupled with pleas of contributory negligence and assumed risk.

The verdict of the jury was in favor of respondent for the sum of $12,000. From a judgment entered thereon appellant has prosecuted an appeal.

I.  One of the contentions of appellant is that the court erred in not sustaining a demurrer to the evidence, interposed at the close of the whole case, upon the theory that respondent assumed the risk incident to the business of appellant as it was carried on.  This calls for a review of the evidence.

Assumption of Risk.

The testimony of respondent was that he had been engaged in taking off angle-bars and putting on new ones for a period of ten months before the injury; that sometimes he handled the chisel and sometimes the maul, but that he used the maul more frequently; that when the angle-bars were stuck to the rail with rust, the chisel would be inserted between the angle-bar and the rail and then be hit with the maul or sledge; that at the time of the injury one Charles McVicker, another employee of appellant, was holding the chisel and respondent was handling the maul; that as respondent hit the chisel Mc-Vicker looked away and moved the chisel, raising the same, and "I struck low on the chisel, a kind of glancing lick;" that a piece of metal thereupon flew in respond-

ent's eye; that when the chisel was hit a square blow respondent had never had the experience of any iron flying up towards his eye; and that he had never before felt particles of iron or rust flying off.

"Q. You know that was frequently the case in knocking these things off, to have particles of rust, iron, and so forth, to fly up? A. Rust fly out to the side; yes.

"Q. It might have been a piece of rust flew in your eye, so far as you knew? A. Something went into my eye.

"Q. During all the time you were engaged taking off these angle-bars, ten months previous to your injury, whenever you would strike the angle-bar, strike with the maul on the chisel, particles of iron and rust would fly off as a result of that blow? A. Be no iron; be rust.

"Q. Say there would be rust—rust is iron, isn't it? A. To a certain extent.

"Q. Particles of rust would fly out? A. Yes.

"Q. And that happened during all of the ten months you were working there? A. Yes.

"Q. Every time you had a piece of angle-bar, hard, rusted on, when you would hit it a hard blow with the hammer the particles of rust would fly out? A. Yes, when you knocked it off it would.

"Q. You don't know whether particles of rust flew in your eye, put it out, or particles of steel, or what it was? A. No, sir, I don't; I know something hit me in the eye."

Charles McVicker testified in part as follows:

"Q. Tell the jury what experience you have had during the time you were working with Mr. Emery for ten months previous to this accident respecting particles of iron or rust flying from these angle-bars when they would be struck by a maul or chisel? A. I had particles of rust fly and hit me in the face. Of course they didn't do any damage; a little bit is all.

"Q. Was that a frequent or infrequent occurrence? A. That was a frequent occurrence.

"Q.   When, ordinarily, would the particles of rust and iron fly most—after the first blow, or after the second blow, or third blow, or whatever it took to take it off? A.   The first and second blows it would fly if any flew at all, first or second blows.

"Q.   Before the angle-bar was loosened?  A.   Yes, sir.

"Q.   Where would those particles of rust and iron come from?  A.   Off the side of the angle-bar.

"Q.   The outside of the angle?  A.   The end.

"Q.   Outside of the end of the angle-bar?  A.   Yes, sir.

"Q.   I wish you would tell the jury now whether or not Mr. Emery struck your chisel at the time he was injured a square or glancing blow?  A.   Seemed to me it was a square lick.

"Q.   Explain to the jury--first tell the jury whether or not you can tell by the feel of the blow whether it is a glancing blow or a square blow?  A.   If it is a square blow the handle feels solid in your hand.  If it is a glancing blow, whichever way it glances your handle turns.

"Q.   Would that tend to sting your hand?  A.   Yes, sir.

"Q.   State to the jury whether or not he struck the chisel you were holding a square or glancing blow?  A. Square blow.

"Q.   Were you looking directly at the chisel at the time he hit it?  A.   No, sir.

"Q.   Where were your eyes?  A.   Kind of turned my eyes away to keep from getting anything in my eyes.

"Q.   Was that usual—to turn your eyes away?  A. Yes, sir,

"Q.   To keep particles from falling in them?  A. Yes, sir.

"Q.   You did that?  A.   Yes.

"Q.   But did you move the handle one way or the other?  A.   I did not.''

Charles W. Keesman, section foreman, testified as follows:

"Q. I wish you would tell the jury whether in taking off these angle-bars, rusted part, in putting the chisel between the angle-bars and the rail and hitting it with a maul, whether or not that will cause particles of rust and iron to fly from the rail? A. Yes, sir, rust gets on the outside of the angle-bar, could fly off.

"Q. Was that a frequent or infrequent occurrence? A. Frequent for it to fly off when it was forced off.

"Q. Was that an occurrence that would happen every time you would take a bar off, when it was struck? A. Yes, sir.

"Q. How often would that angle-bar be stuck to the rail so that you would have to use a chisel and maul? A. I can't say exactly; sometimes would be loose, could take them off with a bar, and probably the next one would be rusted on, have to chisel it loose.

"Q. And every time you would chisel chips would fly? A. Yes, sir.

"Q. Is there any difference with reference to the chips flying from these rails and angle-bars as to whether the chisel is hit a square blow or a glancing blow, so long as the blow is given? A. They will fly just as hard, the chips would.

"Q. Whether the blow is glancing or square? A. Yes, sir."

A careful consideration of the foregoing evidence leads us to conclude that this case falls within the doctrine announced by this court in Harbacek v. Fulton Iron Works, 287 Mo. 479, 229 S. W. 803, and the cases cited therein. Here, as there, the flying of particles of iron or iron rust was an usual and obvious risk incident to the business of appellant as it was carried on, which respondent assumed when he continued in the employ of appellant. Respondent was thoroughly conversant with the manner of performing the work in question, as he had had ten months' experience. He himself directed

the blow which hit the chisel.   There was no evidence,
nor is it contended, that the tools used were in any way
defective.   Respondent knew that particles of rust would
fly out when the chisel was hit a hard blow.   Therefore,
in exposing himself to the hazard of being hit, he con-
sented to assume the risk.

It is argued on behalf of respondent, however, that
the negligence complained of was the looking away of
respondent's fellow-worker McVicker and the changing
of the position of the chisel so that respondent was made
to strike it a glancing blow, thereby causing the chips to
fly into respondent's eye.   The weakness of this conten-
tion is that there was no evidence tending to show that
the direction of flying chips could be controlled by
the character or kind of blow struck, whether square or
glancing.   True, respondent testified that he had never
had the experience of any iron flying up towards his eye
when he hit a square blow.   That is not equivalent, how-
ever, to a statement that a glancing blow would cause the
chips to fly in the direction of respondent's eye.   And
the witness Keesman testified that the chips would fly
just as hard whether the blow was glancing or square.
To hold appellant liable, it was incumbent on respondent
to prove that the glancing blow, which he claims the
moving of the chisel by McVicker made him strike, caused
a particle of metal from some point of contact between
the maul and the chisel to enter his eye.   [Rogers v.
Packing Co., 180 Mo. App. 227.]   But the undisputed
testimony shows that the particles of iron or rust always
flew from the cutting end of the chisel.   And, as the piece
of metal which flew into respondent's eye could have
come from either the angle-bar or the rail, this was one
of the risks incident to the employment and defendant
would not then be liable.   [Rogers v. Packing Co., supra,
Modlagl v. Iron & Foundry Co., 248 Mo. 1. c. 605.]

Under all the evidence the danger of respondent's
employment was plain and apparent, and, having con-
tinued to work with knowledge of the hazard, he assumed

the risk. The demurrer should therefore have been sustained. The judgment is accordingly reversed. *Graves, P. J.,* and *Woodson, J.,* concur; *James T. Blair, J.,* not sitting.