THE STATE EX REL. ST. LOUIS-SAN FRANCISCO RAILWAY COMPANY V. ARGUS COX ET AL., Judges of Springfield Court of Appeals.—46 S. W. (2d) 849.

Division Two, December 1, 1931.

*E. T. Miller* and *Mann, Mann & Miller* for relator.

294

*Sizer & Gardner* for respondents.

296

COOLEY, C.—Certiorari to review and have quashed the opinion of respondents in a case wherein Collie L. Hankins was plaintiff and the St. Louis-San Francisco Railway Company, relator here, was defendant. The case was twice tried and appealed, the plaintiff recovering judgment for $7500 on each trial. On the first appeal respondents reversed the judgment and remanded the cause for error in an instruction. The opinion on that appeal is reported in 14 S. W. (2d) 674. On the second appeal respondents first adopted an opinion reversing and remanding the cause for improper remarks of plaintiff's counsel in argument to the jury, but on a rehearing modified it and affirmed the judgment. The opinion finally promulgated by respondents, affirming the judgment, is reported in 31 S. W. (2d) 596. It is this last opinion, which we shall refer to as the second

opinion, which relators seek to have quashed, claiming that it is in conflict with certain decisions of this court. Conflict is alleged in two particulars: first, the holding by respondents that the question of assumption of risk, an issue in the case, was for the jury under the evidence; second, their holding that the remarks of counsel in argument, while improper, did not constitute reversible error.

Respondents in their second opinion refer to their first opinion for a more complete statement of facts. It is therefore necessary to examine that opinion as well as the second to learn the facts upon which respondents based their ruling that the question of assumption of risk was for the jury. The complaint of alleged improper argument was not in the case on the first appeal.

It appears from respondents' opinions that the plaintiff was an experienced car-repairer and at the time of his injury was in the employ of the defendant and engaged in interstate commerce, his right of action being therefore governed by the Federal Employers' Liability Act. When injured he was attempting to replace a coupler on an interstate car, for which work he required two chains, the coupler being too heavy to be lifted to its position otherwise. For use in their work the plaintiff and a number of other workmen in the yard were each furnished by the defendant an iron chain eight or nine feet long, having a slip link on one end and a hook on the other end. The chains were alike. Each of such employees was furnished but one chain, and when he needed to use two he was to borrow the additional chain from a co-employee. That was the custom, known and approved by the defendant. This the plaintiff did on the occasion in question, borrowing the additional chain he needed from a co-employee named Combs. The Combs chain proved to be defective, resulting in plaintiff's injury.

We quote from the second opinion as follows:

"The Combs chain was stretched across the end of the car by fastening the ends of it to what is called grabirons that were fastened to the car at the end and stood out from the car enough to provide a foothold or a handhold. Plaintiff fastened this chain to the car at one end by passing the end of the chain with the slip link around the rod of the grabiron and then pulling the hook end of the chain through the link so that the chain was looped around the grabiron. He then took the hook end of the chain across to the grabiron on the other side of the end of the car and passed the hook under the rod of the grabiron and up between it and the end of the car and then brought it over and hooked the hook over the chain with the open end of the hook upward. At this time the coupler seems to have been standing on end, and plaintiff fastened his own chain around it and then to the Combs chain, and then let the weight of the coupler down on this chain and swung it around so that one end rested on

the axle of the car. It then became necessary to raise the other end of the coupler high enough to place a jack under it so that it could be jacked up to its proper place. In order to do this, plaintiff took hold of the end of the coupler with his hands and lifted it up and held it with one hand and his body, while he took up the slack in his own chain that was around the coupler and over the Combs chain. When he loosened his hold and let the coupler down until its weight was to be borne by the Combs chain that was fastened across the end of the car, the hook of the Combs chain came loose and let the coupler fall down, and, as it fell, it caught in plaintiff's glove and injured his arm.''

The negligence alleged and which respondents held to be sufficiently shown by the evidence was that the hook of the Combs chain was defective in that the eye of said hook into which the chain was fastened was twisted, bent and crooked, which would cause the hook to turn so that it might come off the chain over which it was hooked when weight came upon the chain, and that the jaws of the hook were worn and spread apart, resulting in its being somewhat V-shaped instead of, as it should have been, more in the shape of the letter U; by reason of which defects the hook would not and did not hold when placed over the chain and when the chain was subjected to the weight of the coupler.

It further appears from respondents' opinion that on the occasion in question the plaintiff placed the hook over the chain in the way he had been instructed by defendant when he was employed; that defendant assumed the duty of inspecting the tools, including the chains, furnished the workmen and did inspect them frequently; that defendant's foreman in charge of plaintiff had known of the defective condition of the Combs chain for a month before the accident, but did not consider it unsafe. The plaintiff did not inspect the Combs chain, assuming, as he had a right to do under the circumstances, that it was fit for use, and did not know that there was anything wrong with it until after the accident. It did not occur to him to inspect it. It does not appear from respondents' opinions that the plaintiff had ever used or noticed the Combs chain or seen it in use prior to borrowing it on this occasion, or how long he had it in his possession before the accident.

One of the defenses tendered was assumption of risk and on that point relator's present contention is that ''the defects in the hook of the chain were open and obvious and the risks and dangers attending the use thereof were such as to be readily apparent to the man of ordinary prudence,'' wherefore respondents should have held that as a matter of law the plaintiff assumed the risk and that in failing so to hold but holding that upon the facts stated that question was for the jury, respond-

ents' second opinion contravenes the following decisions of this court: Osborn v. C. R. I. & P. Ry. Co., 1 S. W. (2d) 181; Russell v. Mo. Pac. Railroad Co., 316 Mo. 1303, 295 S. W. 102; Hoch v. St. L.-S. F. Ry. Co., 315 Mo. 1199, 287 S. W. 1047; Quigley v. Hines, 291 Mo. 23, 235 S. W. 1052; Martin v. Wabash Ry. Co., 30 S. W. (2d) 735; Emery v. C. R. I. & P. Ry. Co., 296 Mo. 674, 246 S. W. 335.

The case being one arising under the Federal Employers' Liability Act, state courts follow the rule relative to assumption of risk applied by the Federal courts. That rule is thus stated in McIntyre v. St. L. & S. F. Ry. Co., 286 Mo. 234, 256, 227 S. W. 1047:

"The Federal courts in cases arising under the Federal Employers' Liability Act hold that an employee . . . assumes all the risks and dangers ordinarily incident to his employment; and risks caused by the employer's negligence which are obvious and fully known to the employee and appreciated by him, or so plainly observable that he must be presumed to know them. [Citing cases.] But he is not obliged to use even ordinary care in discovering dangerous defects. Knowledge will not be imputed to him unless the defects are plainly observable. [Citing cases.]"

The rule as stated in the McIntyre case was quoted approvingly in Osborn v. C. R. I. & P. Ry. Co., supra, and in Oglesby v. St. L.-S. F. Ry. Co., 318 Mo. 79, 1 S. W. (2d) 172, 178.

The "risks and dangers ordinarily incident to his employment," ordinary risks, referred to in the quoted statement of the rule, are those which are incident to the employment absent negligence on the part of the employer. The risk in the present case was not of that class. It was an extraordinary risk, that is, one caused by the employer's negligence. Before an employee will be held to have assumed a risk of the latter class it must be shown that he knew or should have known of the negligence complained of and knew and appreciated or should have known and appreciated the increased danger, and the burden of so showing rests upon the defendant asserting assumption of risk as a defense. [Oglesby v. C. R. I. & P. Ry. Co., supra.] If actual knowledge on the part of the employee is not shown then it must appear that the defect complained of and also the risk or danger arising by reason thereof were so obvious that the employee must be presumed to have observed the defect and appreciated the danger. As said in Westover v. Wabash Ry. Co., 6 S. W. (2d) 843, 847:

"With respect to such a defect (one caused by the employer's negligence), both the defect and the danger to which it gave rise must have been patent."

In the Oglesby case the court quotes approvingly from National Steel Co. v. Hore (C. C. A.), 155 Fed. 1. c. 65, as follows:

300

"To defeat an action by the defense of assumption of risk, the employer must show not only that the servant knew of the negligence of which he complains, but that he *knew and understood, or ought to have known and appreciated,* the increased danger to which he voluntarily exposed himself. There is a *distinction* between knowledge of defects or knowledge of alleged negligent acts, *and knowledge of the risks resulting from such defects or acts.*"

The decisions of this court with which respondents' opinion is said to conflict follow the rule of the Federal courts on assumption of risk. Respondents' opinion recognizes that rule, stating it somewhat more favorably to the defendant than the latter was entitled to, in that respondents do not point out that not only the defects complained of but also the danger arising therefrom must have been apparent. They say:

"If the defects of the chain were so clearly apparent that no reasonable person could be excused for not observing them, then plaintiff should be held to have had notice thereof and to have assumed the risk of using it, but we do not think the evidence shows that condition, and hence cannot hold, as a matter of law, that plaintiff assumed the risk."

Relator, however, does not complain of respondents' statement of the rule. In its brief relator states its contention thus:

"The fault that we find with respondents' opinion in this regard, and which, as we contend, brings it in conflict with the controlling decisions of this court, is not so much that it incorrectly states a principle of law as that it incorrectly applies those principles of law to the facts."

We are concerned in this proceeding only with the question of conflict between respondents' opinion and prior decisions of this court. We have held that it is not our province on certiorari to determine whether the Court of Appeals erred in its application of rules of law to the facts stated in its opinion, but only whether upon those facts it announced some conclusion of law contrary to the last previous ruling of this court upon the same or a similar state of facts. [State ex rel. Continental Life Ins. Co. v. Reynolds, 235 S. W. 88; State ex rel. Continental Life Ins. Co. v. Allen, 303 Mo. 608, 618, 262 S. W. 43.]

In the case referred to by relator with which respondents' opinion is said to conflict, the facts were not the same, nor sufficiently similar to warrant us in holding that conflict exists. Plaintiff, so far as shown, may have proceeded to use the chain immediately upon securing it from Combs with little or no time for observation of it. He had no reason to inspect it. If he observed the defects in hook and eye it cannot be said from the facts stated in the opinion that he should be conclusively presumed to have known the consequent dan-

ger of using the chain in that condition. It was not alone the too-open hook that created the danger, but coupled with that was the action or effect of the bent and crooked eye when weight was placed upon the chain—an effect the plaintiff had had no opportunity to observe. Defendant's foreman who had known of the defects for a month saw nothing about them, so he testified, that in his judgment would render the chain unsafe. How can it be said, then, that the plaintiff under the circumstances should be conclusively presumed to have known the risk which defendant's foreman, presumably better qualified to judge and whose duty it was to know, did not appreciate? There is no conflict on this point between respondents' opinion and the decisions of this court.

The facts relative to the second point of alleged conflict are thus set out in respondents' opinion:

"It is finally insisted that reversible error was committed by counsel for plaintiff at the close of plaintiff's case and in the argument of the case and the failure of the court to discharge the jury at that time. That raises the most serious question on this appeal. It appears that at defendant's request two physicians were appointed by the court to make a physical examination of the plaintiff. This examination was made and plaintiff testified to the fact that he had been examined by these doctors. At the close of plaintiff's evidence the following occurred:

" 'By Mr. Sizer: We rest, Your Honor, assuming he will put on the two doctors the court appointed.

" 'By Mr. Mann: We objected to that before and ask the court to strike it out and instruct the jury to disregard it.

" ' (No ruling.)

" 'By Mr. Sizer: We rest on condition at this time and on the theory that the defendant will bring the two doctors appointed by the court on the application of defendant to inform the court and jury what they found wrong with the plaintiff at this time and if the defendant should fail to bring the doctors which were appointed at their request, then we would want it understood that we would have an opportunity to bring the doctors in if we so desire.'

"Mr. Mann then objected to the statement and insisted if plaintiff had any more evidence to offer in chief that it be done then. Mr. Sizer then stated: 'We are not asking this permission for any doctors of our own, but asking this permission to introduce them should the defendant fail to put them on because they were appointed by the court at the request of defendant.' By Mr. Mann: 'We want to ask if they want to use the doctors that it be done now.' The court held with Mr. Mann, and plaintiff then rested without using these doctors.

"In the argument to the jury Mr. Gardner, of counsel for plaintiff, said:

" 'Mr. Mann talked to you about the extent of this injury. It is in testimony that this court appointed some doctors to examine this man and at the defendant's request he was examined. Not only that, but Dr. Cowan, a doctor here at Aurora, examined him with a view to a position with the Standard Oil Company, and the testimony in this case was silent as a tomb in its introduction to the jury. Can you draw any evidence from the fact that they did not produce those doctors here?'

" 'By Mr. Mann: If the court please, I object to this argument with reference to the failure to produce these doctors, as being prejudicial. They had the right to produce these doctors. They did not produce them. They were appointed by the court. We object as improper argument.'

" 'By the Court: Objection sustained.'

" 'By Mr. Mann: I ask that the jury be discharged from the consideration of this case for the injecting into the argument of prejudicial argument.'

" 'By the Court: Application will be denied, but the jury will not take it into consideration.'

"Exception was then saved by defendant."

The opinion then holds that the doctors appointed by the court were, when so appointed, officers of the court, as accessible to the plaintiff as to the defendant, and that it was manifestly erroneous for plaintiff's counsel to attempt to induce the jury to draw an inference unfavorable to the defendant because the latter had not called the doctors as witnesses, citing Atkinson v. United Rys. Co., 286 Mo. 634, 228 S. W. 483. The opinion then states that it is not every error committed by counsel in the stress of a hotly contested trial or in the heat of argument to the jury that will constitute reversible error, and that a large discretion must be allowed the trial court in correcting such errors; that counsel should be allowed latitude in argument, but is not to be permitted to draw deductions not based on the evidence, nor to comment on the failure of the opposing party to call witnesses who are as accessible to one party as to the other. After further discussion respondents stated in substance that while the trial court sustained the objection to the erroneous argument such action under the circumstances did not remove the poison injected by counsel's conduct, nor cure the error; that the case was close on the facts "as to whether or not the plaintiff, under the Federal rule which must be applied in this case, assumed the risk or was guilty of contributory negligence, and an inference by counsel that the defendant was not fair toward the plaintiff in the conduct of the trial may have influenced the jury

to decide as it did;'' and that the court should have severely reprimanded plaintiff's counsel and explained to the jury that plaintiff had the same right to call the doctors as did the defendant and that the jury should not be influenced by defendant's failure to call them, or if the court did not see fit to do that it should have discharged the jury and ordered another trial.

As originally written, the opinion then concluded with a paragraph stating in substance that the cause was reversed and remanded. On rehearing, respondents re-adopted the opinion with the exception of said concluding paragraph, in lieu of which they added the following:

''This case was previously submitted and the foregoing opinion handed down and the judgment reversed and the cause remanded. A motion for rehearing was sustained and the cause again submitted. We adhere to all that we said above and again promulgate it as the opinion of the court, but have concluded to affirm instead of reversing and remanding. Our reason for this change in result is that we have concluded that our statute will not permit us, under the facts in this case, to reverse this judgment on the ground of misconduct of counsel.

''This case has been twice tried and the same verdict rendered in each instance. In the first trial the errors which we have noted here were not present, and yet the same verdict was rendered by the jury. That being so, it is not probable that the misconduct of counsel at the last trial affected the result. Our statute (Sec. 1513, R. S. 1919) prohibits the appellate court from reversing a judgment for errors in the trial that did not appear to have influenced the verdict. In obedience to that statute, we shall not reverse the judgment in this case on account of the misconduct of counsel, for we are unable to say that such misconduct affected the result.

''The judgment will be affirmed.''

Relator contends that in affirming the judgment notwithstanding their finding that error had been committed in the trial in the conduct and argument of counsel, respondents' opinion conflicts with prior decisions of this court holding that error is presumptively prejudicial and will require a reversal unless it appears to the appellate court from the record that the error was not prejudicial. Relator cites the following cases as so holding: Aronovitz v. Arky (Mo. Sup.), 219 S. W. 620, 624; Haynes v. Trenton, 123 Mo. 325, 326, 27 S. W. 622; Langston v. Railroad, 147 Mo. 457, 464, 48 S. W. 835; Dayharsh v. Railway, 103 Mo. 570, 578, 15 S. W. 554; Nixon v. Railroad, 141 Mo. 425, 439, 42 S. W. 942; Jones v. Pub. Co., 240 Mo. 200, 216, 144 S. W. 441; Morris v. Railway, 144 Mo. 500, 508, 46 S. W. 170; State ex rel. Central Coal & Coke Co. v. Ellison, 270

Mo. 645, 195 S. W. 722; Theobald v. Transit Co., 191 Mo. 395, 90 S. W. 354.

Relator also calls attention to the holding in Aronovitz v. Arky, supra, and in Cottrill v. Krum, 100 Mo. 397, 406, 13 S. W. 753, that the statute cited by respondents, now Section 1062, Revised Statutes 1929, forbidding reversal of cases unless the appellate court "shall believe that error was committed by it (the trial court) . . . materially affecting the merits of the action," is not inconsistent with the rule that error is presumed to be prejudicial. Relator insists that respondents' opinion in effect holds that error is presumptively non-prejudicial and that the burden is upon the party against whom it was committed to show affirmatively that it was harmful in the given case.

We shall not take space to review the cases above cited. In a general way they state the rule substantially as contended by relator. With one exception, the Theobald case, the errors under consideration were in matters in which the trial court does not have discretionary powers, such as rulings on the instructions and in the admission of evidence. In the Theobald case it was held that the court had abused its discretion in failing to sustain challenges for cause to two jurors. The case, however, was reversed outright for insufficiency of evidence.

While it is not conceded on respondents' part that their opinion holds as relator contends, it is argued in their behalf that a different rule should be applied, or at least that that rule should be less strictly applied, where the alleged error is in a matter concerning which, as in this instance, a discretion is necessarily lodged in the trial court. The question suggested is interesting, but we need not determine or discuss it because in our judgment respondents' opinion does not hold as relator contends.

It is true that respondents hold that the improper argument was "manifestly erroneous," citing the Atkinson case. That statement alone would not show that they considered it *prejudicially* erroneous. And it may be observed here (though possibly beside the point) that in the Atkinson case the question of the character and extent of the plaintiff's injuries was the chief contested issue and the trial court had *permitted* the improper reference to the defendant's failure to call the doctor appointed by the court and to what plaintiff's counsel assumed would have been the doctor's testimony. After further discussion respondents say in their opinion that the improper inference which plaintiff's counsel sought to have the jury draw "may have influenced the jury to decide as it did." But after further consideration of the question upon rehearing respondents announce their final conclusion that "it is not probable that the misconduct of counsel at the last trial affected the result."

Considering the whole opinion as it now stands it seems clear to us that it was intended and should be understood to mean that while respondents still believed and held that error had been committed they did not believe it had affected the result; in other words, that it appeared to them from the record that the error had not affected the result. In this connection it may be stated further that, so far as appears from the opinion, the verdict was not challenged as being excessive, and the jury must have known that the doctor to whom reference had been made in argument could not have testified to any fact bearing upon the question of liability.

In the Aronovitz case, where the error complained of was in an instruction and this court held it was not prejudicial under the circumstances, we said:

"But when the question is whether a mistaken direction like the one before us worked prejudicially to the losing party, the criterion by which to answer is not infallible, and only a strong probability that harm was or was not done is attainable." [219 S. W. l. c. 624.]

In the instant case respondents' conclusion on the whole record evidently was that harm had not been done.

In cases more recent than those cited by relator in which the contention was made that improper conduct and argument of counsel amounted to reversible error, this court in disposing of the contention has used language substantially similar to that employed by respondents herein. In Gettys v. American Car & Foundry Co. (Mo. Sup.), 16 S. W. (2d) 85, 90, in passing upon such contention, we said:

"With this evidence before the jury, *we are unable to say that it* (the argument) *was prejudicial,* and we think that these particular facts constitute it, as to the prejudicial effect, a matter for the determination of the trial court on motion for a new trial."

In the same case, same page, speaking of another alleged improper statement in argument, we said:

"*We are unable to deduce that the statement inflamed or prejudiced the jury.* This was also a question to be determined by the trial court." (Italics in last two quotations ours.)

See also Span v. Jackson-Walker Coal & Mining Co. (Mo. Sup.), 16 S. W. (2d) 190, 200, where evidence claimed to have been immaterial and prejudicial had been admitted.

We do not find respondents' opinion to be in conflict with decisions of this court and our writ herein should be and it is quashed. *Westhues* and *Fitzsimmons, CC.,* concur.

PER CURIAM:—The foregoing opinion by COOLEY, C., is adopted as the opinion of the court. All of the judges concur.