James M. Russell v. Missouri Pacific Railroad Company, Appellant.—295 S. W. 102.

Division One, April 11, 1927.

1. NEGLIGENCE: Defective Tool: Combining with Fellow-Servant's Negligence. Where there is evidence that the claw bar, furnished by defendant to plaintiff and with which he was required to draw nails from the car door which he was ordered to repair, was defective and would not grip the nail, and that just as he was drawing a nail his co-employee negligently let go his hold upon the door and thereby caused the door to move and the nail to fly out quickly and strike him in the eye, it cannot be ruled as a matter of law that the defective claw bar was not the proximate cause of the injury, or that a demurrer to the evidence should be sustained.

2. ———: Assumption of Risk: Obvious Defect: Assurance of Safety from Foreman. A failure to furnish the servant reasonably safe tools with which to work is the master's negligence, and an injury to the servant arising from the use of a defective tool is not a normal or necessary incident of his employment; but nevertheless, under the Federal Employers' Liability Act, if the defect and risk alike are so obvious that an ordinarily prudent person would observe and appreciate them, and the servant continues in the employment without obtaining from the master an assurance that the defect will be remedied, he assumes the risk, even though it arises out of the master's negligence; but where the servant observed the defect in the claw bar and complained of it to the foreman, and was told by the foreman: "Go ahead and use it; I will get you a new one in a few days," and the servant relying upon that assurance continued to use the bar, he did not assume the risk of the injury which resulted from such use.

3. EXCESSIVE VERDICT: For $40,000: Reduced to $15,000: Passion and Prejudice: Loss of Eye. While at work repairing a car, a nail he was attempting to draw struck plaintiff, a carpenter, in the right eye. He suffered complete loss of sight of the eye, and for a long time endured intense pain. The left eye became inflamed to such an extent as to impair its vision, though at the trial eight months later no irritation was present, but the expert testified that, though in his opinion glasses could be so adjusted that he could get normal vision in the left eye, a sympathetic inflamation might develop at any time, in which event the right eyeball would have to be removed promptly to save the sight of the left eye. At the time of his injury he was thirty-eight years of age, was earning five dollars a day, and three months later he attempted to do carpentry work, but had to quit because he could not see. Thereafter he attempted various kinds of labor, but could pursue no employment because he was unable to see. The jury returned a verdict for $40,000, of which amount he remitted $25,000. Held, that the original verdict for $40,000 was excessive, but that fact does not of itself indicate that the jury was actuated by passion or prejudice. Held, also, that the final judgment for $15,000 was not excessive.

Corpus Juris-Cyc. References: Appeal and Error, 4 C. J., Section 3059, p. 1072, n. 41. Damages, 17 C. J., Section 397, p. 1087, n. 56; Section 453, p. 1116, n. 6. Master and Servant, 39 C. J., Section 441, p. 308, n. 13; Section 908, p. 705, n. 21; Section 933, p. 726, n. 3; Section 986, p. 789, n. 53; Section 989, p. 790, n. 70; Section 1326, p. 1134, n. 43; Section 1358, p. 1178, n. 65.

Appeal from Circuit Court of City of St. Louis.—*Hon. Franklin Miller*, Judge.

AFFIRMED.

*James F. Green* and *M. U. Hayden* for appellant.

(1)    The burden rested upon respondent to establish by the greater weight of the evidence, not only the alleged defective condition of the claw bar, and that in such condition it was not reasonably safe for the use which respondent was making of it at the time of his injury, but also a causal connection between said condition and his injury. The proof in this case wholly fails to show either that the claw bar was not reasonably safe for respondent's use, or that its alleged defective condition was the proximate cause of respondent's injury. It is not established either by the evidence, or by reasonable inference deducible therefrom, that this accident could have been prevented and would not have occurred in precisely the same manner if, at the time, respondent had been using a V-shaped claw bar in perfect condition. Lowe v. Railroad Co., 265 Mo. 587; Zasemowich v. Am. Mfg. Co., 213 S. W. 799; Patrum v. Railroad Co., 259 Mo. 109; Trigg v. Lumber Co., 187 Mo. 227; Chrismer v. Telephone Co., 194 Mo. 189; Brands v. Car Co., 213 Mo. 698; Coin v. Lounge Co., 222 Mo. 488; Warner v. Railway Co., 178 Mo. 125; Strother v. Railroad Co., 188 S. W. 1102; Cadwell v. Stove Co., 238 S. W. 415; Forbes v. Dunnavant, 198 Mo. 193; Mathis v. Stock Yards Co., 185 Mo. 434; Trainer v. Mining Co., 243 Mo. 359; C. & N. W. Railway Co. v. Bower, 241 U. S. 470. (2)    At the time of this accident appellant was engaged in interstate commerce and respondent was employed in such commerce. The case was tried under, and is governed by the provisions of, the Federal Employers' Liability Act. Therefore, the questions whether appellant was negligent as charged, and whether respondent assumed the risk of injury under the facts established by the evidence, are to be determined by the law as declared by the Supreme Court of the United States. C. & N. W. Railway Co. v. Bower, 241 U. S. 470; Second Employers' Liability Cases, 223 U. S. 1; Railroad v. Vreeland, 227 U. S. 59; Railway Co. v. Horton, 233 U. S. 492; Pryor v. Williams, 254 U. S. 43; Lopez v. Hines, 254 S. W. 37; McIntyre v. Railway Co., 286 Mo. 234. (3)    Respondent assumed the risk of whatever injury, if any, was reasonably likely to occur as the result of using the claw bar in the condition in which he says it was at the time of the accident. He was experienced in its use, and thoroughly familiar with its construction and with its condition at the time and with such danger as might reasonably ensue from using it in that condition. His complaint to Hoppes establishes those facts. His complaint to Hoppes did not refer to, or have in contemplation, the danger of such an accident as the one in which he was injured, nor was such an accident within

the contemplation of Hoppes when the latter promised to provide respondent with a new claw bar. The complaint and promise were not sufficient to suspend the operation of the rule of assumed risk. Pryor v. Williams, 254 U. S. 43; Railway Co. v. Horton, 233 U. S. 492; Jacobs v. Railway Co., 241 U. S. 229; C. & N. W. Railway Co. v. Bower, 241 U. S. 470. (4) The trial court erred in not sustaining appellant's motion for a new trial upon the ground that the verdict was so excessive as to indicate bias, passion and prejudice on the part of the jury toward appellant. Hallenbeck v. Railway Co., 141 Mo. 97; Greenwell v. Railway Co., 224 S. W. 404; Markey v. Railroad, 185 Mo. 348; Johnson v. Coal Co., 205 S. W. 615; Adams v. Railroad, 229 S. W. 790; Burtch v. Railway Co., 236 S. W. 338; Hurst v. Railroad, 219 S. W. 566; Fitzsimmons v. Railroad Co., 242 S. W. 915; Varley v. Taxicab Co., 240 S. W. 228; Merb v. Terminal Railway Co., 252 S. W. 370.

*N. Murry Edwards* and *Charles E. Morrow* for respondent.

(1) The defendant's general demurrer to the evidence was properly refused. (a) The defendant was guilty of actionable negligence in furnishing plaintiff and requiring him to use a claw bar which was defective and not reasonably safe for use. Williams v. Pryor, 272 Mo. 613; State ex rel. v. Reynolds, 200 S. W. 58. (b) The defendant is liable for the negligence of plaintiff's fellow-servant Winstanley in negligently letting go his hold on the door while plaintiff was pulling the nail. Sec. 1, Employers Liability Act, 35, sec. 65 (Comp. St. 1916, sec. 8657). (c) There was substantial evidence to support the two specifications of negligence above. The defendant requested a general demurrer to the evidence and did not request instructions withdrawing either of said specifications of negligence and thereafter requested two instructions which were given, submitting them both to the jury, which authorized a verdict for plaintiff if the facts hypothesized therein were found and defendant is estopped to assert that there was not sufficient evidence to support the same. Torrence v. Pryor, 210 S. W. 430; State ex rel v. Allen, 272 S. W. 925; Davidson v. Heinz, 246 S. W. 295; Crum v. Crum, 231 Mo. 626; Berkson v. Railway Co., 144 Mo. 211; Water Co. v. City of Neosho, 136 Mo. 498. (2) The plaintiff did not assume as a matter of law the dangers which caused his injury. (a) He had been promised a new and good claw bar and relied upon the promise, and during the time reasonably required for its performance or until the particular time specified for its performance, the plaintiff relying upon the promise does not assume the risk, unless the danger was so imminent that no ordinarily prudent man would rely upon such promises. Seaboard Airline Ry. Co. v. Horton, 233 U. S. 492. Plaintiff's foreman was his immediate su-

perior and the proper person to whom to make complaint and his promise to remedy the condition relieves plaintiff of any assumption of risk. Carnahan v. Railroad, 102 Neb. 76. (b) The plaintiff only assumed the ordinary risks and dangers of his employment which were obvious and known to him or by the exercise of ordinary care could have been known to him. The negligence of Winstanley in letting go his hold upon the door was not a danger obvious to the plaintiff and was not and could not have been known to him before he was injured. Chesapeake Railroad Co. v. DeAtley, 241 U. S. 310; Louisville & N. Railroad Co. v. Stewart, 241 U. S. 261; Boldt v. Railroad Co., 245 U. S. 441; Pope v. Terminal Railroad, 254 S. W. 43; Preston v. Railroad, 239 S. W. 1080; Martin v. Railroad, 253 S. W. 513; Morato v. Railroad Co., 87 Ore. 219; Louisville & N. Railroad Co. v. Mullins, 181 Ky. 148; Sanlomassimo v. Railroad, 105 Atl. 14; Hudson v. Railroad, 176 N. C. 488; Costoni v. Railroad, 78 N. H. 348; Louisville & N. Railroad Co. v. Wright, 80 So. 93; Central R. Co. v. Sharkey, 259 Fed. 144; San Pedro, Railroad Co. v. Brown, 258 Fed. 806; Illinois Central Railroad Co. v. Stewart, 223 Fed. 30; Chicago Railroad Co. v. Ward, 173 Pac. 212; Illinois Central Railroad Co. v. Norris, 245 Fed. 926; Willever v. Railroad, 89 N. J. L. 697; Reul v. Railroad, 166 Wis. 128; Southern Ry. Co. v. Fisher, 74 So. 580.

ATWOOD, J.—This is a personal injury case in which the jury returned a forty thousand dollar verdict. A *remittitur* of twenty-five thousand dollars was entered, and judgment rendered for fifteen thousand dollars, from which judgment defendant has appealed.

The petition alleged plaintiff's cause of action alternatively in two counts. The first count charged defendant with negligence at common law and under the statutes of Missouri governing fellow-servants of railroad employees. The second count charged defendant with negligence under the Federal Employer's Liability Act. During the trial and before the case was submitted plaintiff dismissed as to the first count, and went to the jury on the second count of the petition. This count charged that plaintiff was an employee of defendant, and was engaged in interstate commerce at the time he was injured; that defendant negligently failed to furnish plaintiff a reasonably safe claw bar with which to do certain work therein alleged to have been required of him; that defendant negligently furnished plaintiff with a claw bar which was defective, dangerous and not reasonably safe for said use; that defendant negligently ordered, directed, required and caused plaintiff to do said work with said defective, dangerous and unsafe claw bar; that defendant and its servant Winstanley, who was holding the car door undergoing repair, let go his hold thereon and negligently caused, suffered and permitted said car door to move while plaintiff was pulling a nail therefrom; and that defendant and its

servant Winstanley negligently failed to hold said door and keep the same from moving while plaintiff was pulling said nail. Plaintiff's injuries are alleged to have been caused by said nail striking his right eye whereby his right eye ball was cut, lacerated and bruised, and the sight completely destroyed and the eye ball permanently disfigured. It was also alleged that the left eye thereby became infected and inflamed and the sight permanently weakened and impaired; that because of said injuries he suffered great physical pain and would so suffer in the future, that his nervous system was permanently impaired, that he lost the earnings of his labor of five dollars a day and would lose said earnings in the future, and that his earning capacity has been permanently impaired.

Defendant filed a general demurrer to the petition, which was overruled. Defendant thereafter filed answer to said second count, admitting that it is a railroad corporation, and that at all the times mentioned in said petition plaintiff was employed by defendant and engaged in interstate commerce. The answer also pleaded a general denial, the simple tool doctrine and assumption of risk.

The reply was a general denial.

Plaintiff's evidence consisted of his own testimony, that of his wife, and that of two eye specialists, one of the latter being employed by the Missouri Pacific Hospital Association, said testimony tending to support the allegations in the second count of plaintiff's petition. Defendant introduced no evidence except the testimony of its employee Winstanley who was working with plaintiff at the time he was injured. At the close of plaintiff's case and again at the close of the whole case plaintiff interposed a demurrer to the evidence, which was overruled. The evidence will hereafter be more particularly noted in connection with the points urged by appellant.

The first assignment of error relates to the admission of testimony, but no alleged error of this character is pointed out or urged in the brief, and we shall treat this assignment as abandoned.

Appellant next assigns error in the action of the court overruling defendant's demurrer to the evidence at the close of plaintiff's case and again at the close of the whole case. The particular points urged **Demurrer to Evidence.** in this connection are that the proof fails to show that the claw bar was not reasonably safe for respondent's use, or that its alleged defective condition was the proximate cause of respondent's injury. In pressing this claim counsel for appellant ignore the alleged negligence of plaintiff's co-employee in letting go his hold upon the door, stating in their reply brief that plaintiff made no effort to prove this allegation of negligence. We do not so read the evidence. Plaintiff testified that he was told by Mr. Hoppes, the foreman whose duty it was to oversee the repairing

of cars, to repair a certain car door. The track sloped considerably to the east, and the car laid out for repairs was blocked at the east end by a piece of railroad tie against the wheel. The door to be repaired was on the south side of this car, and stood about one-third or one-half open, hanging on rollers at the top, but "swinging loose at the bottom, on account of the boards being decayed and rotten it would not hold in the guide." The particular repair undertaken was to place a new board on the bottom of the door, and before this could be done some old 16-penny wire nails had to be drawn from the bottom outer margin or edge of the door a little above plaintiff's head as he stood on the ground facing the car. On cross-examination plaintiff testified that "the door was swinging free," and while he was pulling the nails Winstanley, his co-employee, was standing at his left near the west or front end of the door "holding the door from moving." The car standing on the down grade to the east with the door swinging free, such action on the part of the co-employee was apparently a necessary and proper precaution, but plaintiff's testimony was that just as he was in the act of drawing the last nail Winstanley let go his hold upon the door, thereby permitting the door to move and causing the nail to fly out quickly through the wide open U-shaped slot of the claw bar, striking him in the eye. Plaintiff's evidence tended to prove that the ordinary form of claw bar used in drawing nails was V-shaped with sharp edges which closed against the body of the nail and regardless of its size gripped the nail while it was being drawn, while the claw bar which defendant furnished plaintiff was so wide, battered and misshapen that it would not grip the body of the nail at all. The trial judge properly refused to declare as a matter of law that defendant was not negligent in furnishing plaintiff with such a claw bar, nor is it difficult to discern a causal connection between the condition of the claw bar, the sudden jerk of the door which plaintiff said resulted from Winstanley's letting go his hold thereon, and plaintiff's injury. It was for the jury, properly instructed, to say whether or not defendant was negligent under the specification laid. Defendant's demurrer to the evidence was both times properly overruled.

Appellant next says that plaintiff assumed the risk. A workman of mature years is taken to have assumed such risks as are normally and necessarily incident to his occupation, but the risk here under

**Assumption of Risk.** consideration is not of that kind. It is not naturally incident to plaintiff's occupation as a carpenter, but arises from an alleged failure of the master to provide the servant with a suitable and safe appliance for the work, as it was his duty to do. Under the Federal rule if the employee in such case knows of the defect, or if the defect and risk alike are so obvious that an ordinarily prudent person under the circumstances would have

observed and appreciated them, and ''he continues in the employment, without objection, or without obtaining from the employer or his representative an assurance that the defect will be remedied, the employee assumes the risk, even though it arise out of the master's breach of duty. If, however, there be a promise of reparation, then during such time as may be reasonably required for its performance or until the particular time specified for its performance, the employee relying upon the promise does not assume the risk unless at least the danger be so imminent that no ordinarily prudent man under the circumstances would rely upon such promise.'' [Seaboard Air Line v. Horton, 233 U. S. 492, l. c. 504.] Plaintiff observed the defect in the claw bar and complained of it to his foreman on the Saturday preceding the Tuesday forenoon, April 17, 1923, when he was injured. The foreman said: ''Go ahead and use it; I'll get you a new one in a few days.'' Relying on this promise plaintiff continued to use the bar. The danger does not appear to have been so imminent that an ordinarily prudent man under the circumstances would not have relied upon such promise, and plaintiff's case clearly comes within the above noted exception to the doctrine of assumed risk. We find no contrary ruling in the cases cited by appellant, and we hold that plaintiff did not assume the risk.

Under head of ''Points and Authorities'' counsel for appellant say that ''the trial court erred in giving Instruction 1 at the instance of respondent.'' Five cases are cited, presumably as supporting authorities, but the point is thereafter only incidentally referred to in briefing the claim that the verdict was excessive. We have carefully examined this instruction in the light of the cases cited and find no reversible error therein.

The only point left for our consideration is that the amount of the original verdict, and the amount of the verdict and judgment of $15,000 as finally entered by the trial court, is excessive. The original

**Excessive Verdict.** verdict of $40,000 was excessive, but that fact does not in itself indicate that the jury was actuated by passion or prejudice. [Clifton v. Railroad, 232 Mo. 708.] Was the judgment for $15,000 finally entered by the trial court excessive? Plaintiff was 38 years of age and was earning $5 a day as a carpenter at the time he was injured on April 17, 1923. Plaintiff suffered complete loss of sight in the right eye immediately and for a long period of time he endured intense pain. The left eye became inflamed to such an extent as to impair the vision, though at the trial eight months later one of the doctors testified that no irritation was then present, and in his opinion glasses could be adjusted so plaintiff could get normal vision in this eye, but a sympathetic inflammation might develop at any time, in which event the right eyeball would have to be removed promptly to save the sight of the left eye. About

three months after he was injured plaintiff sought work. His first job was on a truck moving household furniture, but after four days he had to give it up because he could not see. He next went to work in the mechanical department of the American Car & Foundry Company, but only held the position about five hours because he could not see. He then worked for a carpenter carrying lumber for about three weeks at 40 cents an hour, and then as a carpenter's helper at 45 cents an hour, but was laid off because he was unable to see. In Adams v. Railroad Co., 287 Mo. 535, we allowed $12,500 for the loss of the left eye of plaintiff who was 18 years old and earning $3.75 a day at the time he was injured. There was no evidence of existing injury to the other eye, although there was testimony that such might appear in subsequent months or years if the substance which struck the eye was still there. The actual loss and impairment of vision shown in the instant case was greater than in the Adams case. Measured by the standard there set nearly seven years ago, this judgment of $15,000 is not excessive.

Finding no reversible error in the case the judgment is affirmed. All concur, except *Gantt, J.,* not sitting.