## GARRETT CONST. CO. v. ALDRIDGE.
### No. 9912.

Circuit Court of Appeals, Eighth Circuit.
Nov. 12, 1934.

J. M. Smallwood and A. S. Hays, both of Russellville, Ark. (Jess Reynolds, of Clarksville, Ark., on the brief), for appellant.

Fred A. Isgrig, of Little Rock, Ark. (C. C. Wait, of Russellville, Ark., on the brief), for appellee.

Before BOOTH, Circuit Judge, and MUNGER and BELL, District Judges.

BELL, District Judge.

This action was brought by Rosa Aldridge, appellee, against the Garrett Construction Company, appellant, and Jess Goodwin, one of its employees, for damages resulting from the injury and death of Loren Aldridge, deceased son of the appellee. The verdict of the jury was for the appellee as administratrix for $500 on account of conscious suffering of the deceased and for $4,500 in her own right on account of loss of support by deceased and against the appellant, Garrett Construction Company, but was silent as to the defendant Goodwin. From a judgment on the verdict, the Garrett Construction Company appealed. As in the court below, the parties will be referred to as plaintiff and defendant.

On June 2, 1932, the defendant was engaged in the construction of a concrete pavement on a highway east of Atkins, Ark. Goodwin was employed by the defendant as a truck driver, and the deceased, who was seventeen years of age and small of stature, was employed to serve drinking water to the workmen. It is alleged that the injury and death of deceased was caused by the negligence of Goodwin in the operation of his truck.

The highway ran in an easterly and westerly direction and the pavement was being laid from the east toward the west. A concrete "mixer" used on the work was moved westward as the work progressed. The materials for the concrete were assembled at a place about two miles west of where the pavement was being laid at the time of the accident and were hauled in trucks to the mixer. Some eighteen or twenty trucks were used in connection with the work. About three-hundred feet west of the mixer the trucks were turned and from that point backed to the mixer. "Forms" were constructed along the sides of the highway to hold the concrete. These forms were eighteen feet apart, the desired width of the pavement. The trucks backed eastward to the mixer on the south side of the highway and inside of the south form. When a truck was unloaded, it was driven forward along the north side of the highway in a westerly direction and inside the north form. The wheels of the trucks were kept eighteen inches to two feet from the forms so as not to disturb them. The trucks were about five feet wide, which left a space of from three to four feet between them

when passing. A crew of fifteen to twenty men worked between the forms and in front of or just west of the mixer preparing the road bed for the pavement. The trucks in going to and from the mixer passed through this crew of workmen.

At the time of the accident a truck driven by Brown was being unloaded at the mixer; and, in front of his truck, a truck driven by Hill was backing toward the mixer. Goodwin was backing a heavily loaded truck in front of the truck driven by Hill. These trucks were in line on the south side of the highway. A truck driven by Thompson was moving forward away from the mixer on the north side of the highway.

After Goodwin had turned his truck around preparatory to backing to the mixer, the deceased served him a drink of water, then walked around the front end of Goodwin's truck and started eastward on the north side thereof. To avoid the truck driven by Thompson in a westerly direction, he stepped to the south in front of Hill's truck and to the rear of Goodwin's truck; that is, between the two trucks. He was four or five feet in front of Hill's truck and apparently about twenty-five or thirty feet from the rear of Goodwin's truck with a pail of water in each hand. The trucks were thirty to thirty-five feet apart when the deceased stepped between them. He did not look back and took ten or fifteen steps before he was struck.

Goodwin testified that he was occupying the driver's seat on the south side of the truck and was looking out of the south window of the cab and to the rear, but that he did not see deceased or know that he was there. The evidence is conflicting as to whether it would have been possible for him to have seen the deceased behind his truck. His view to the rear undoubtedly was at least partially obstructed by the bed and cab of his truck. Goodwin backed his truck about two-hundred feet after taking the drink of water and struck the deceased forty to fifty feet west of the mixer. The north rear wheel struck the deceased, ran over him, and caused injuries from which he died the following day.

The negligence alleged and submitted to the jury by the court was whether Goodwin started and backed his truck at a rapid and unusual rate of speed without sounding his horn or giving a signal and without keeping a proper lookout to the rear when he knew, or by the exercise of ordinary care could have known, that the deceased was in a perilous position.

The answer alleged that there was no negligence on the part of Goodwin, and contributory negligence and assumption of risks by the deceased. The defendant moved for a directed verdict at the close of the plaintiff's testimony and again at the close of all the testimony. The motions were denied and the rulings are assigned as error.

█ It is a familiar rule that when the defendant moved for a directed verdict it admitted the truth of the competent evidence offered by the plaintiff, the material facts which it tended to prove and all reasonable inferences favorable to the plaintiff (Louisville, etc., Railroad Co. v. Woodson, 134 U. S. 614, 10 S. Ct. 628, 33 L. Ed. 1032); and that it was the duty of the court to interpret the evidence and all legitimate inferences that might be drawn therefrom in the light most favorable to the plaintiff. Gunning v. Cooley, 281 U. S. 90, 50 S. Ct. 231, 74 L. Ed. 720; Chicago, M. St. P. & P. Railroad Co. v. Linehan (C. C. A.) 66 F.(2d) 373.

█ The facts presented by the evidence required the submission of the issue of negligence to the jury. Obviously workmen were exposed to danger and the defendant was required to use ordinary care for their safety and protection. The evidence is conclusive that Goodwin did not sound his horn or give a signal. There is substantial evidence that he was backing his truck faster than usual. He almost closed a gap of thirty or thirty-five feet between his truck and Hill's in a distance of one-hundred feet. He had occasion to know that the deceased was east of him and possibly behind his truck. He testified: "The last time I saw him (deceased) he was in between the forms north of our line of trucks going east." He knew that the deceased had walked eastward and that other trucks were moving forward on the north side of the highway. If Goodwin's view to the rear was obstructed, his duty to look, to move cautiously, and to signal was increased accordingly. Under the existing situation, the jury properly could have found that ordinary care required Goodwin, when he knew that the deceased had walked to the rear of his truck, that a crew of men were engaged at the place, that a truck was backing behind him, that another truck was moving forward, to give a signal and to move more cautiously than he did, especially as no one was directing the movement of the trucks. The court would not have been justified in holding as a matter of law that Goodwin was not negligent. The jury found that there was negligence and

there is substantial evidence to sustain the finding.

■ Defendant contends that there was error in permitting a verdict against the master when there was not also a verdict against the servant. The court instructed the jury that it could find for the plaintiff on both counts, or either of them, and against both defendants, or either of them. No exception was taken to this instruction; the court's attention at no time was called to this alleged error; neither was an instruction in this connection requested by appellant. With the record in this condition the instructions given became the law of the case and are not subject to review by the appellate court. Fricke v. General Accident, Fire & Life Assurance Corporation (C. C. A.) 59 F.(2d) 563; Southern Power & Light Co. v. United States (C. C. A.) 72 F.(2d) 368.

The defendant further contends that the court erred in refusing to give a requested instruction as follows: "You are instructed that if you believe from the testimony deceased was working in a place where there was a great deal of noise and it would have been difficult to have heard the horn if it had been sounded, it would not be negligence to fail to sound the horn." This instruction was designed to advise the jury that the failure to sound the horn was not the proximate cause of the injury provided the noise was so great that it would have been difficult to have heard it. The court in its charge properly defined the term "negligence," directed the jury's attention to the acts of negligence involved, and further instructed the jury as follows:

"Negligence is never presumed, but must be proven and the burden of proof is upon the plaintiff to prove by a preponderance of the evidence some one of the acts of negligence mentioned in her complaints against the said defendants and that the injury of the said Loren Aldridge was the direct and proximate results of such negligence and without any fault or negligence on the part of the said Loren Aldridge contributing to the injury, and if you so find your verdict should be for the plaintiff. Of course, if you do not

so find, your verdict should be for the defendant. * * *

"Even though you may believe from the testimony that Jess Goodwin failed to sound his horn and increased the speed of his truck just prior to the time of striking Loren Aldridge, this would not constitute negligence on the part of Jess Goodwin, unless you further find that he knew or by the exercise of ordinary care could have known the dangerous position of Loren Aldridge."

■■ The "proximate cause" of an injury is the primary moving cause without which it would not have been inflicted, and which in the natural and probable sequence of events, without the intervention of any new and independent cause, produces the injury. City of Winona v. Botzet (C. C. A.) 169 F. 321, 23 L. R. A. (N. S.) 204. We are not prepared to say that the failure to sound the horn under the circumstances in this case was not the primary moving cause without which the injury and death of the deceased would not have occurred. Evidently the jury found either that it was the failure to sound the horn or the rapid backward movement of the truck that constituted the act of negligence which was the proximate cause of the accident. Under the evidence, this phase of the case was properly submitted in the instructions of the court, and the refusal to give the instruction requested by defendant was not error.

■ The defendant further contends that if plaintiff is entitled to recover in her own right for loss of support by deceased, the verdict should have been for the present value of contributions during the minority of the deceased only. The defendant saved no exception to the instruction of the court on the measure of damages; neither did it request an instruction containing the proposition for which it now contends; consequently this question is not properly before the court. Standard Accident Insurance Co. v. Rossi (C. C. A.) 52 F.(2d) 547; Mansfield Hardwood Lumber Co. v. Horton (C. C. A.) 32 F.(2d) 851; Wisconsin & Arkansas Lumber Company v. Ward (C. C. A.) 32 F.(2d) 974.

The judgment is affirmed.