GUARDIAN LIFE INS. CO. OF AMERICA
v. KISSNER et al.

No. 11449.

Circuit Court of Appeals, Eighth Circuit.

May 6, 1940.

Charles A. Neumann, of St. Louis, Mo., for appellant.

Roberts P. Elam, of St. Louis, Mo. (Mark D. Eagleton, of St. Louis, Mo., on the brief), for appellees.

Before GARDNER, WOODROUGH, and THOMAS, Circuit Judges.

GARDNER, Circuit Judge.

This was an action at law in which the appellees as plaintiffs brought action against the appellant on two policies of life insurance in the sum of $5,000 each, upon the life of Adam G. Kissner, Sr., issued by appellant, with a double indemnity provision in each of the policies for the payment of an additional sum of $5,000 under each policy upon receipt of due proof that the death of the insured resulted independently and exclusively of all other causes from bodily injuries effected solely through external, violent and accidental means. The parties will be referred to as they were designated in the lower court.

No issue is made with reference to the pleadings. The petition was in conventional form, admitted that the defendant had paid the face amount of both policies, alleged that the insured sustained bodily injuries effected through external, violent and accidental means, which directly and independently of all other causes resulted in his death, and asked judgment for the additional sum of $5,000 upon each policy as double indemnity benefits for accidental death of the insured. The defendant's answer put in issue the allegation that the insured's death resulted from injuries effected solely through external, violent and accidental means, which, independently of all other causes, resulted in his death. On trial, defendant interposed motion for a directed verdict at the close of all the testimony, which motion was denied and the cause was sent to the jury upon instructions to which no exceptions were taken by defendant. The jury returned a verdict in favor of plaintiffs, upon which judgment was entered in favor of them, and defendant prosecutes this appeal.

■ In the final analysis, the only issue presented goes to the correctness of the ruling of the court in denying defendant's motion for a directed verdict. This presents for our consideration the question as to whether there was substantial evidence to sustain a verdict for the plaintiffs. In considering the question on review, we must assume the evidence presented in behalf of the plaintiffs was true, and they are entitled to the benefit of all favorable inferences that may reasonably be drawn from the evidence. Massachusetts Protective Ass'n v. Mouber, 8 Cir., 110 F.2d 203; Gunning v. Cooley, 281 U.S. 90, 50 S.Ct. 231, 74 L.Ed. 720.

It was the contention of plaintiffs that the insured accidentally sustained a contused wound to his right ankle on or about March 1, 1935, when he fell while alighting from his automobile, and that this wound became infected, causing him to suffer from disordered conditions which directly resulted in his death. It appears from recitals in the certified copy of the death certificate offered in evidence by the plaintiffs that the principal cause of the death of the insured was septic bronchial pneumonia; that another contributory cause was diffuse cellulitis. This certificate contains the following additional data with reference to the death of the insured:

"23. If death was due to external causes (violence), fill in also the following:

"Accident, suicide, or homicide? Accident.

"Date of injury. 3/2/1935

"Where did injury occur? St. Louis, Mo.

"Specify whether injury occurred in industry, in home, or in public place. His own automobile, fell.

534

"Manner of injury. Alighting from his automobile.

"Nature of injury. Injured ankle."

The attending physician testified that on March 2, 1935, he treated the insured for a bruised condition of the inside of his ankle just above the malleolus, or a contused wound; that such condition could hardly result from anything other than the application of force. The evidence showed that prior to March 1, he had had no such condition.

The court instructed the jury that in the absence of any evidence as to how such injury occurred, the fact that the insured sustained an injury produced by a violent and external means permitted the presumption that such injury was accidental. This charge was not excepted to and there is no serious contention that the evidence was insufficient to warrant the jury in finding that the insured sustained an accidental injury to his ankle on or about March 1st.

■ The challenge of the defendant goes to the question as to whether the accidental injury sustained was the proximate cause of the insured's death. On the question of proximate cause the court instructed the jury that, "Whether a cause is proximate or remote does not depend alone upon the closeness in the order of time in which things occur. An efficient and adequate cause being found, it must be deemed the true cause unless some other cause not incidental to it, but independent of it, is shown to have intervened between it and the result. If, for example, Adam Kissner, Sr., the deceased, sustained an injury to his foot near the ankle, and such injury necessarily produced inflammation, which in turn produced a disease or disordered condition of the injured part, whereby other organs of the body could not perform their natural and usual functions, and in consequence the said Adam Kissner, Sr., died, the death could be properly attributable to the original injury. In other words, if these results followed the injury as its natural consequence and would not have taken place had it not been for the injury, then the injury could be said to be the proximate or sole cause of the death * * *."

Not having been excepted to, this instruction became the law of the case (F. W. Woolworth Co. v. Carriker, 8 Cir., 107 F.2d 689 and cases there cited), and the instruction is in accord with the applicable law as announced by the Supreme Court of Missouri. Fetter v. Fidelity & Casualty Co., 174 Mo. 256, 73 S.W. 592, 61 L.R.A. 459, 97 Am.St.Rep. 560; Wheeler v. Fidelity & Casualty Co., 298 Mo. 619, 251 S.W. 924.

■ Under the Missouri statute, a certified copy of a death certificate "shall be prima facie evidence in all courts and places of the facts therein stated." Sec. 5816, Rev.Stat.Mo.1919; Secs. 9046, 9060, Rev.Stat.Mo.1929 (Mo.St.Ann. §§ 9046, 9060, pp. 4189, 4199); Simpson v. Wells, 292 Mo. 301, 237 S.W. 520; Griffith v. Continental Casualty Co., 299 Mo. 426, 253 S.W. 1043; Cropper v. Titanium Pigment Co., 8 Cir., 47 F.2d 1038, 78 A.L.R. 737; Brown v. Maryland Casualty Co., 8 Cir., 55 F.2d 159. Previous provisions of the statute specify what the certificate of death shall contain, and plaintiffs' Exhibit 5, being the death certificate referred to, indicates that it was required. In Griffith v. Continental Casualty Co., supra [299 Mo. 426, 253 S.W. 1046], the death certificate contained recital that, "The cause of death was as follows: Shock and injuries (fractured skull). Jumped from window. Contributory (secondary) suicide." The court held that it constituted prima facie evidence of all its recitals.

■ The attending physician testified with reference to his treatment and the course and progress of the disease, and gave it as his opinion, based upon his observation and treatment, that the cause of the insured's death was the bruise on his ankle; that the immediate cause was septic bronchial pneumonia caused by the injury to his ankle; that the septic bronchial pneumonia resulted from the infection which the insured had. The Supreme Court of Missouri, in Kimmie v. Terminal R. R. Ass'n of St. Louis, 334 Mo. 596, 66 S.W.2d 561, 564, in discussing the sufficiency of the evidence in that case, said: "While the testimony of the doctors does leave, far from certain, the question of whether the tumor was a sarcoma or cancerous, yet we think it was sufficient to make that matter a question for the jury." See, also, Corbett v. Terminal R. R. Ass'n, 336 Mo. 972, 82 S.W.2d 97.

It is argued that the testimony of the attending physician was vague, evasive

and contradictory; that it was devoid of any scientific and logical explanation of his diagnosis. We have carefully examined the testimony and think the criticism of counsel goes to the weight of the testimony and the credibility of the witness. He clearly and distinctly gave it as his opinion, based upon his treatment of the case and his professional knowledge, that the septic bronchial pneumonia which developed subsequent to the injury was directly traceable to the accidental injury and caused thereby. The testimony of the attending physician was corroborated to some extent at least by the testimony of Dr. Siebert, who assisted in a post mortem examination made on the body of the deceased, that from his examination the direct cause of the insured's death was pneumonia following an infection of the leg. In answer to a hypothetical question, Dr. Siebert testified that in his opinion the deceased died "as the result of a contusion of his leg, which became infected, resulting in an ascending infection in the leg * * * with evidence of systemic infection."

True, the testimony produced by the defendant was to the effect that the insured died of "heart failure." Of course, in a general way, every death may be said to be caused by heart failure, but failure of the heart can scarcely be said to be a disease, but a functional lapse. The inquiry at once arises as to what caused the heart to fail. But if that raised an issue of fact, the jury determined it in favor of the plaintiffs, and we can not say that their verdict is not sustained by substantial evidence.

The judgment appealed from is therefore affirmed.