## ÆTNA LIFE INS. CO. v. McADOO.
### No. 11721.

Circuit Court of Appeals, Eighth Circuit.

Nov. 20, 1940.

S. Lasker Ehrman, of Little Rock, Ark. (J. Paul Ward, Grover T. Owens, and E. L. McHaney, Jr., all of Little Rock, Ark., on the brief), for appellant.

S. M. Casey, of Batesville, Ark., and Shields M. Goodwin, of Little Rock, Ark., for appellee.

Before STONE and GARDNER, Circuit Judges, and OTIS, District Judge.

GARDNER, Circuit Judge.

This was an action brought by appellee as plaintiff below against the Aetna Life Insurance Company, appellant herein, to recover on a policy of life insurance on the life of her father, Alonzo D. McAdoo, under which policy she was the named beneficiary. The parties will be referred to as they appeared below. This is the second appeal in this case. On the first trial, the lower court directed a verdict in favor of the plaintiff. On appeal, the case was reversed and remanded for re-trial on account of the refusal of the lower court to admit certain evidence proffered by the defendant. Aetna Life Insurance Company v. McAdoo, 8 Cir., 106 F.2d 618.

On October 7, 1935, defendant delivered to the employees of the Batesville Grocery Company, including Mr. McAdoo, a wholesale policy of insurance. The policy issued to McAdoo was dated October 1, 1935, in the principal sum of $4,000. That policy provided that it should not become effective until the first payment upon it was paid during the good health of the insured. On September 21, 1936, McAdoo applied to the company for conversion of the wholesale policy to an ordinary life non-participating policy, with a premium of $102.64, payable semi-annually. He paid the first annual premium in cash. The application contained a request that the policy be dated back to September 3rd. In this second policy, plaintiff was named as beneficiary. No physical examination was required as the original policy gave the right of conversion without such examination. Both policies contained clauses making them incontestable after they had been in force for two years during the lifetime of the insured. Insured died February 24, 1937, within two years of the date of the issuance of the first policy. His death was caused by cancer.

Upon the trial, defendant admitted the issuance of the policies and the death of the insured, but defended on the ground that the insured was not in good health

when the policy was delivered and the first premium paid. At the close of all the testimony, the defendant moved for a directed verdict, which was denied, and the case was submitted to the jury upon instructions to which no exceptions are urged on this appeal. The jury returned a verdict in favor of the plaintiff, and from the judgment entered thereon this appeal is prosecuted.

On this appeal defendant relies solely upon the alleged error of the lower court in refusing to direct a verdict in its favor. Defendant's counsel, in their brief, say: "The appellant does not contend that there was any error in the charge given by the court to the jury. On the contrary, as we have heretofore stated, the charge correctly states the law."

This limits the issue to a very narrow margin, to-wit: Was there substantial evidence to sustain the verdict? As defendant accepts the instructions given by the court as correct, they become the law of the case for purposes of this appeal. F. W. Woolworth Co. v. Carriker, 8 Cir., 107 F.2d 689. The court, in its instructions, told the jury that there was but one issue in the case, and that was whether McAdoo was in good health on October 7, 1935; that if he was not in good health at that time, their verdict must be for the defendant regardless of whether McAdoo was aware of the fact that he was not in good health at that time. The court on the question of good health said in its instructions: "You are further instructed that a mere temporary indisposition which does not tend to weaken or undermine the constitution does not render the policy void. You are further instructed that the term 'good health' means that the insured had no grave, important or serious disease and that he was free from any ailment that seriously affected the general soundness or healthfulness of his system."

The Supreme Court of Arkansas, in Lincoln Reserve Life Insurance Co. v. Smith, 134 Ark. 245, 203 S.W. 698, 700, defined the meaning of "good health" in a similar policy provision as follows: "The solution of this question turns also upon the good faith and apparent state of health of the insured at the time of the delivery and acceptance of the policy. The stipulation does not constitute a warranty of good health at the time of the delivery of the policy, but only amounts to a stipulation for a delivery while the insured is in apparent good health, and free from such diseases as would seriously affect the risk."

In considering the question whether there was substantial evidence to sustain a verdict for the plaintiff, we must assume the evidence presented in her behalf was true, and she is entitled to the benefit of all favorable inferences that may reasonably be drawn from the evidence. Guardian Life Insurance Co. v. Kissner, 8 Cir., 111 F.2d 532; Gunning v. Cooley, 281 U.S. 90, 50 S.Ct. 231, 74 L.Ed. 720; Champlin Refining Co. v. Walker, 8 Cir., 113 F.2d 844. If, when so considered, fair-minded men might honestly and reasonably draw different conclusions, this court will not substitute its judgment for that of the jury. Helvering v. Johnson, 8 Cir., 104 F.2d 140; Egan Chevrolet Co. v. Bruner, 8 Cir., 102 F.2d 373, 122 A.L.R. 987. So viewing the testimony, the jury may well have believed that the insured was employed by the Batesville Grocery Company as bookkeeper and auditor continuously from 1924 to August 31, 1936. From the time of his employment until March, 1936, he lost no time from his work on account of illness. He was treated for hemorrhoids in October, November and December, 1935, which was an inconsequential ailment from which he was completely relieved before Christmas of 1935, and the ailment never returned. He was a large man, weighing upwards of 200 pounds, and customarily lost weight in the hot summer months. This was true in the summer of 1935, but prior to Christmas of that year it was not noticeable. The hemorrhoidal condition did not contribute to his final illness and death. Several lay witnesses testified without objection to facts concerning the insured's appearance, activities and health during 1935. In March, 1936, being ailing, he consulted Dr. H. G. Rudner, a recognized cancer specialist of twenty years experience, who diagnosed his case as cancer of the rectum. Dr. Rudner testified that in his opinion the insured had "pathology in his lower bowels from one to four months previous to this time"; that the ailment which he diagnosed as cancer on March 25, 1936 had existed only one to four months prior to that time. Dr. J. W. Oursler, who attended insured in his last illness, from February 1, 1937, to his death, stated that carcinoma prostate was the immediate cause of his death and that he suffered from this disease for one year.

There was, we think, substantial evidence sustaining the finding of the jury that the insured did not have cancer at or prior to October 7, 1935. True, there was expert testimony to the contrary, and defendant offered in evidence a hospital record which it is claimed contains damaging statements made by the insured, and it is asserted that: "By far the strongest evidence in this case and that which Dr. Rudner's testimony fails to overcome and fails to explain away, are the statements of the insured himself given to Dr. Chisolm upon his admission to the Baptist Hospital." But we are not here concerned with the weight of the testimony nor the credibility of the witnesses. Whether or not Dr. Rudner's testimony was of sufficient weight to overcome the alleged statements of the insured was for the jury. On the testimony of Dr. Rudner, the jury was warranted in believing that the affliction from which the insured was found to be suffering in March, 1936, was not present at or prior to October 7, 1935, and that insured at that date was not suffering from any grave, important or serious disease. This expert testimony finds corroboration in numerous circumstances and by the testimony of lay witnesses.

The judgment appealed from is therefore affirmed.