## COLE v. CHICAGO, ST. P., M. & O. RY. CO.
### Civil Action No. 1186.

District Court, D. Minnesota,
Fourth Division.
March 25, 1945.

444

Robt. J. McDonald and William H. De-Parcq, both of Minneapolis, Minn., for plaintiff.

James J. Giblin, Asst. U. S. Atty., of St. Paul, Minn., for defendant.

BELL, District Judge.

This is an action to recover damages resulting from personal injuries sustained by the plaintiff in the roundhouse of the defendant at Minneapolis, Minnesota, on October 25, 1943. At the time of the accident the plaintiff was a member of the Railroad Operating Battalion of the United States Army; and, with the employees of the defendant, was engaged in making an inspection of a diesel motor. An effort was being made to detect an oil leak in the "blower" that had been reported by the road crew. Employees of the defendant in charge of the work undertook to find the leak by the application of air pressure. The roundhouse airline was attached to the motor and eighty to ninety pounds pressure suddenly applied. The blower was so constructed as to resist not to exceed eight to ten pounds pressure. When the air was applied, a heavy piece of metal was blown from the equipment with great force striking and injuring the plaintiff.

The act of negligence alleged was the application of air under high pressure to the motor by the employees of the defendant when they knew, or by the exercise of ordinary care should have known, that the motor would not resist such pressure and that it was likely to result in injury to the plaintiff and others on the premises.

The defendant denied negligence. Under a contractual relation between the defendant and the United States, the latter is required to respond for any damages for which the defendant is held liable.

A verdict for $58,725.25 was returned for the plaintiff. Defendant's motion for an order setting aside the verdict and judgment entered thereon and directing that a judgment notwithstanding the verdict of the jury be entered in favor of the defendant and against the plaintiff; or, in the alternative, that said verdict and judgment be vacated and set aside and a new trial granted was submitted to the court on briefs on February 20, 1945.

The evidence in this case clearly and conclusively proved the liability of the defendant to the plaintiff. There was no prejudicial error in the instructions or in rulings on the reception or exclusion of evidence. A discussion of these phases of the case would be a work of supererogation.

The size of the verdict presents the only question for the court on the consideration of the defendant's motions. The verdict was large indeed, but the plaintiff sustained serious multiple injuries. His right eye was completely destroyed and the eyeball must be removed to save the left eye. His hearing was eighty per cent lost. The nasal bones were fractured and misplaced. There was a loss of sensation in the right side of the face, concussion and brain injury, nystagnus on looking to either side, headaches, dizziness, ringing in the ears, scar from the bridge of the nose extending over the right eye, severe pain and suffering. These injuries in the main are permanent. He was hospitalized for four months, has been unable to engage in any gainful occupation, and has a disability rating by the United States of eighty per cent.

The plaintiff was thirty-seven years of age, strong, healthful, active, and energetic before the accident and had an expectancy of more than thirty years. He had been employed by a railroad company as a helper, repairer, and carpenter for eight years

prior to the accident. For five years before his enlistment in the Railroad Operating Battalion in October, 1942, he earned slightly over two thousand dollars a year. During the last year of this period, he earned from two hundred forty to two hundred forty-eight dollars a month. He received an honorable discharge from the Army April 30, 1944. He finished one year in high school and is scantily equipped to engage in any occupation other than one requiring manual labor, and the evidence is very conclusive that he never can re-engage in the railroad service. The plaintiff was entitled to a substantial award.

It is elementary that when the jury has returned a verdict the evidence and all inferences that reasonably can be drawn therefrom must be viewed in the light most favorable to the decision of the jury. Tennant v. Peoria & Pekin Union Railway Company, 321 U.S. 29, 64 S.Ct. 409, 88 L.Ed. 520; Lumbra v. United States, 290 U.S. 551, 54 S.Ct. 272, 78 L.Ed. 492; Gunning v. Cooley, 281 U.S. 90, 50 S.Ct. 231, 74 L.Ed. 720; Ætna Life Insurance Company v. McAdoo, 8 Cir., 115 F.2d 369; Garrett Construction Co. v. Aldridge, 8 Cir., 73 F.2d 814; Adams v. Barron C. Collier, Inc., 8 Cir., 73 F.2d 975; Chicago, Milwaukee, St. Paul & Pacific Railroad Co. v. Linehan, 8 Cir., 66 F.2d 373. In the Tennant case the court said [321 U.S. 29, 64 S.Ct. 412]: "* * * The focal point of judicial review is the reasonableness of the particular inference or conclusion drawn by the jury. It is the jury, not the court, which is the fact-finding body. It weighs the contradictory evidence and inferences, judges the credibility of witnesses, receives expert instructions, and draws the ultimate conclusion as to the facts. The very essence of its function is to select from among conflicting inferences and conclusions that which it considers most reasonable. * * * That conclusion, whether it relates to negligence, causation or any other factual matter, cannot be ignored. Courts are not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable."

The amount of the damages in an action for personal injuries is a question of fact for the determination of the jury and ordinarily courts will adhere to the well-established rule that this function of the jury should not be invaded by the court. Fairmount Glass Works v. Cub Fork Coal Co., 287 U.S. 474, 53 S.Ct. 252, 77 L.Ed. 439; Tennant v. Peoria & Pekin Union Railway Company, supra; Ætna Life Insurance Company v. McAdoo, supra; Terminal Railroad Ass'n v. Farris, 8 Cir., 69 F.2d 779; Chicago, Milwaukee, St. Paul & Pacific Railroad Company v. Linehan, 8 Cir., 66 F.2d 373; Jennings v. Chicago, Rock Island & Pacific Railway Company, D.C., 43 F.2d 397; Russell v. Missouri Pacific Railroad Co., 316 Mo. 1303, 295 S.W. 102, c. d. 275 U.S. 551, 48 S.Ct. 114, 72 L.Ed. 421; Hurst v. Chicago, Burlington & Quincy Railroad Co., 280 Mo. 566, 219 S.W. 566, 10 A.L.R. 174; Avance v. Thompson, 320 Ill.App. 406, 51 N.E.2d 334, 341. In the case last cited the court said: "As a court of appeals, in passing upon the question of alleged excessive damages, we can neither speculate nor conjecture as to how plaintiff's financial status might be affected in the future by business booms or depressions; by the uncertainties of the labor situation after the war, or how his earnings might be affected by his expenses away from home, taxes, work clothing, union dues, social security and old age pension. We assume that the jury took these matters into consideration in arriving at their verdict and that the trial court did the same in entering the remittitur. Nor can we in a personal injury case reduce the amount of the verdict to a matter of mathematical computation. De Filippi v. Spring Valley Coal Co., 202 Ill.App. 61. Nor can we compute the earning capacity of the amount awarded plaintiff at any given rate of interest. Apparently counsel for defendant expects this court to do all this. We do not find it within our province to do so."

While this quotation relates to the duty of the appellate court, it is applicable here.

The question of whether a verdict is excessive properly may be addressed to the discretion of the trial court on a motion for a new trial. Dimick v. Schiedt, 293 U.S. 474, 55 S.Ct. 296, 79 L.Ed. 603, 95 L.Ed. 1150; Terminal Railroad Ass'n v. Farris, supra; Kroger Grocery & Baking Company v. Yount, 8 Cir., 66 F.2d 700, 92 A.L.R. 1166.

A comparison of verdicts usually is of little assistance because of greatly varying facts and circumstances. The nature of the injuries, the permanency, age, expectancy, earning capacity before and aft-

er injury, talents, health, education, contribution to dependents, pain and suffering, the issues involved, purchasing power of money, and many other factors must receive consideration. For these reasons awards cannot be standardized even for the same or similar injuries. Jennings v. Chicago, Rock Island & Pacific Railway Company, supra; Gamble v. Smith, 211 Minn. 457, 1 N.W.2d 411; Crouch v. Chicago Great Western Railway Company, 172 Minn. 447, 216 N.W. 234; Quinn v. Chicago, Milwaukee & St. Paul Railway Company, 162 Minn. 87, 202 N.W. 275, 46 A.L.R. 1228; Noyes v. Des Moines Club, 186 Iowa 378, 170 N.W. 461, 3 A.L.R. 605.

■ If a verdict is so excessive as to show passion and prejudice, the court should set it aside and grant a new trial. Jennings v. Chicago, Rock Island & Pacific Railway Company, supra; Public Utilities Corporation v. McNaughton, 8 Cir., 39 F.2d 7; Padrick v. Great Northern Railway Company, 128 Minn. 228, 150 N.W. 807, L.R.A.1915F, 1; Goss v. Goss, 102 Minn. 346, 113 N.W. 690. In the Jennings case the plaintiff had a verdict for $42,500 in addition to $1,300 already paid to him by the defendant making a total recovery of $43,800. The court reduced the award to $37,300. In that case the rule suggested was as follows [43 F.2d 398]: "If a verdict in a personal injury case is in excess of what could fairly be said to be sustained by substantial evidence, taking the view of it most favorable to the plaintiff, then it, or at least so much of it as is unsupported, is attributable to passion, prejudice, or sympathy on the part of the jury. Courts have properly tried to keep verdicts in cases such as this within the bounds of reason and to some extent in harmony with verdicts in similar cases tried in the same state or district."

In this case I think the verdict was not the result of passion and prejudice. Nothing occurred during the trial to excite the passion and prejudice of the jurors. Sympathy may have been a factor as it perhaps is impossible for jurors to eliminate all feeling of sympathy for a severely injured person. It must be assumed that the jury considered the evidence pertaining to injuries, permanency of the injuries, the past earning capacity of the plaintiff, his future earning capacity, and all the evidence bearing on the question of damages. Such consideration inevitably would lead to a verdict for a very substantial sum.

However, it appears that the plaintiff has some earning capacity left and may enjoy life in a large measure notwithstanding his handicaps.

■ In my opinion the verdict is not so large as manifestly to indicate passion and prejudice justifying a new trial. At the same time I am of the opinion that the verdict is extravagant and that it reaches beyond the point where it is sustained by substantial evidence. In the interest of justice the verdict should be reduced in the sum of $15,000 and permitted to stand for the balance. This will eliminate the necessity of a new trial and will result in substantial justice to all parties.

■ I am constrained to add that the power of the court to set aside or reduce a verdict on the ground that it is excessive should be used with extreme caution. Generally such action would result merely in a substitution of the opinion of the court for that of the jury; in other words, it ordinarily would be an invasion of the function of the jury by the court and a denial of trial by jury. Courts should respect the verdicts of juries and not disturb them except in extreme cases and under rare circumstances. A verdict should not be set aside merely because it is excessive in the mind of the court but only when it is so grossly excessive as to shock the court's sense of justice, and the impropriety of allowing it to stand is obvious. Dimick v. Schiedt, supra; Armit v. Loveland et al., 3 Cir., 115 F.2d 308; Powers v. Wilson, 2 Cir., 110 F.2d 960; Boyle v. Ward, D.C., 39 F.Supp. 545. In this connection Chancellor Kent said: The damages, therefore, must be so excessive as to strike mankind, at first blush, as being, beyond all measure, unreasonable, and outrageous, and such as manifestly show the jury to have been actuated by passion, partiality, prejudice, or corruption. In short, the damages must be flagrantly outrageous and extravagant, or the court cannot undertake to draw the line; for they have no standard by which to ascertain the excess.

In an observation of more recent vintage by Mr. Justice Sutherland, the court in the Dimick case, supra [293 U.S. 474, 55 S.Ct. 300], said: "The right of trial by jury is of ancient origin, characterized by Blackstone as 'the glory of the English law' and 'the most transcendent privilege which any subject can enjoy' (Bk. 3, p. 379); and, as Justice Story said (2 Story on the Constitution, § 1779), '* * * the Constitu-

tion would have been justly obnoxious to the most conclusive objection if it had not recognized and confirmed it in the most solemn terms.' With, perhaps, some exceptions, trial by jury has always been, and still is, generally regarded as the normal and preferable mode of disposing of issues of fact in civil cases at law as well as in criminal cases. Maintenance of the jury as a fact-finding body is of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care."

The plaintiff having entered a remittitur of fifteen thousand dollars ($15,000) in accordance with the order of the court heretofore made, the defendant's motion for a new trial is overruled.