## CARTER CARBURETOR CORP. v. RILEY.
### No. 14204.

United States Court of Appeals
Eighth Circuit.
Jan. 9, 1951.

William R. Gentry, St. Louis, Mo. and Glen W. Watkins, New York City (Frank H. Durham, Minneapolis, Minn., on the brief), for appellant.

Wilbur S. Lycan, Jr., Minneapolis, Minn. (Brenner & Bouchard, Minneapolis, Minn., on the brief), for appellee.

Before GARDNER, Chief Judge, and WOODROUGH and THOMAS, Circuit Judges.

GARDNER, Chief Judge.

This was an action brought by appellee against appellant to recover damages for personal injuries and for damage to property resulting from an airplane crash. The parties will be referred to as they were designated in the trial court. Plaintiff alleged that on or about June 12, 1948, he purchased from Van's Air Service, Inc., of St. Cloud, Minnesota, a certain Carter mechanical fuel pump manufactured and sold by defendant for use in Navion airplanes; that it negligently and carelessly manufactured and assembled said fuel pump and knew or ought to have known that it was defective when sold and that such defect would not likely be discovered; that among other acts of negligence defendant carelessly and negligently machined and finished the mating surfaces of the pump valve housing and lower dome casting and failed to make such mating surfaces true, even and flush with each other; and carelessly failed to inspect and test said pump; that by reason thereof on October 13, 1948, plaintiff's Navion plane was caused to crash after take-off from an airport in Vermillion, Alberta, Canada, resulting in injury and damages to plaintiff's person and property.

Defendant answered, denying negligence on its part and pleaded affirmatively that the accident resulting in injuries to plaintiff and his property was caused or contributed to by his own negligence and by the negligence of parties other than the defendant. The case was tried to a jury and at the close of all the evidence defendant moved for a directed verdict, which motion was denied, and the case was submitted to the jury on instructions to which neither of the parties saved any exceptions. The jury returned a verdict in favor of plaintiff for $6,250.00, for which amount judgment was duly entered. Defendant moved for judgment notwithstanding the verdict, which motion was denied, and it prosecutes this appeal, seeking reversal on substantially the following grounds: The court erred in denying defendant's motion for a directed verdict because (1) plaintiff failed under the applicable law of Alberta, Canada, to establish the essential factors necessary as a basis for recovery for negligence by remote vendee against the manufacturer; (2) under the undisputed documentary evidence the question of proximate cause and intervening cause were for the court and not for the jury to determine; (3) the jury's implied finding that the accident was not proximately caused by intervening acts of third parties is not supported by substantial evidence; (4) under the federal rule it is necessary for plaintiff to offer substantial evidence in proof of his cause of action, a mere scintilla being insufficient and a scintilla of evidence is all that can be found in plaintiff's favor in the record in the case at bar; (5) the most that can be said in favor of plaintiff's case is that injury may have been caused by defendant's negligence or may have been caused by one or more other causes for which defend-

ant would not be responsible so that the evidence does not clearly point to negligence on the part of the defendant as the proximate cause of plaintiff's injury.

▆ Proof was offered as to the applicable law of Alberta, Canada, where the accident occurred and it is here urged that under the law of Canada as the defendant construes it, plaintiff has failed to establish the essential factors necessary to entitle him to recover because he was a remote vendee. We think we need not concern ourselves as to the law of Alberta, Canada, nor, indeed, need we inquire whether the law of Canada is different from the applicable law of the State of Minnesota. The court's instructions, not being excepted to by either party, became the law of the case and we must determine the question of the sufficiency of the evidence by the law as so announced. F. W. Woolworth Co. v. Carriker, 8 Cir., 107 F.2d 689; Guardian Life Ins. Co. v. Kissner, 8 Cir., 111 F.2d 532; Aetna Life Ins. Co. v. McAdoo, 8 Cir., 115 F.2d 369.

▆ The jury having returned a general verdict in favor of the plaintiff, we must assume that it resolved all conflicts in the evidence in favor of plaintiff and in considering the question of the sufficiency of the evidence to sustain the verdict we must take that view of the evidence which is most favorable to the prevailing party. The question which we must determine is one of law; to-wit, whether or not there was substantial evidence to sustain the issues presented to the jury. The jury having found the issues in favor of plaintiff we must accept as established all facts which the evidence reasonably tended to prove and plaintiff is entitled to the benefit of all inferences which may reasonably be drawn from the evidence and circumstances proven. Railway Express Agency, Inc. v. Mackay, 8 Cir., 181 F.2d 257; Mattson v. Central Electric & Gas Co., 8 Cir., 174 F.2d 215.

With these limitations in mind we turn to a consideration of the sufficiency of the evidence. The court told the jury that the main questions of fact to be determined were: first, was the defendant negligent in respect to the matters claimed to have caused plaintiff's damage; second, if so, was that negligence the proximate cause of the injuries claimed to have been suffered, and third, was plaintiff himself guilty of contributory negligence which may have contributed in some degree to the accident and injury? The court then instructed the jury: " * * * in the present case it is the law that a manufacturer whose product is of such a nature that if defective its use is likely to result in injury to the ultimate user, is under a duty to use ordinary and reasonable care in the construction and inspection of the product. The defendant in such a case is not an insurer of its product. It does not guarantee in this case that the pump will never fail."

The court further instructed the jury as to the meaning of proximate cause, intervening cause and contributory negligence.

Plaintiff testified that on October 13, 1948, his son, a licensed pilot, with plaintiff, also a licensed pilot, as passenger, took his plane off from the airfield at Vermillion, Alberta, Canada. When they reached an altitude of about 200 feet plaintiff noticed the smell of gasoline. He immediately looked at the fuel pressure dial on the instrument panel and saw that the fuel pressure was dropping. The pressure dropped to zero, the engine stopped completely and did not hit or backfire, and the plane crashed at the edge of the field. Inspection of the right-hand fuel pump while it was still attached to the engine showed that an edge of the rubber composition circular diaphram or gasket was not in place all the way around and there was testimony that with the diaphram pulled in there resulted an air leak in the fuel pressure system so that the gasoline supply to the engine failed. There was evidence that this right-hand pump on test showed no pressure at all, indicating that it was not in condition to pump fuel. A removal of the upper diaphram assembly disclosed that the two screws which held the two sections of the pump together were not tight. An inspection of the outer circumference of the diaphram on this right hand pump where it had been displaced indicated that it had not been properly in place; that the

mating surfaces of the lower castings were uneven and rocked when placed on a flat surface, indicating that the surface was not true nor uniform. An examination showed that the mating surface had been die-cast but had not been machined and the center section of the casting was higher than the outer edge and there was evidence warranting the jury in believing that none of these defects were caused by the crash.

The pump was originally designed by defendant as an automobile pump for a maximum pressure of five and a half pounds and for automobile pressure test defendant used pressure up to twenty pounds. Defendant then decided to sell the pump as an airplane pump for use in Navion airplanes. Defendant knew that as an airplane pump it would be subjected to a maximum operating pressure of approximately fifteen pounds, three times the pressure required to operate as an automobile pump. There was also evidence that the usual safety factor would require a pressure test of forty to sixty pounds. There was evidence that the two inner diaphram screws were located in the center of the pump rather than around the periphery and that these were not sufficient to insure proper and uniform clamping action of the mating surfaces of the upper and lower castings; that while two screws in the center were sufficient to seal the automobile pump which used a maximum pressure of five and a half pounds, they were not enough to seal the airplane pump which used a maximum pressure of fifteen pounds, but there should have been six screws around the lower diaphram rather than two in the center of the pump. The evidence warranted the jury in believing that the two inner diaphram screws were not properly tightened when the pump left the factory. On this right-hand pump the center sections of the castings were higher than the outside clamping surfaces, thus reducing the clamping efficiency. There was evidence as to other defects which went into the details of technical construction.

It was the contention of the defendant that the failure of the pump was due to a bent arm on this right-hand pump and that if this arm had been properly installed the effect would have been to increase the pressure. As defendant did not install the pump it is contended that this was an intervening cause for which defendant was not responsible. A test, however, made before the jury largely discredited this theory that the slight bend in the right arm had anything to do with the failure of the pump and there was evidence that the arm was properly installed. In further support of the contention that the accident was caused by an intervening responsible agency, it was contended that defendant had directed certain changes in the fuel system and that it had an agreement that such changes would be made. Among these changes it contends that there was to have been a shut-off valve in the outlet side of the pumps which could be operated by the pilot and that had this change been made the accident could not have occurred. The evidence, however, warranted the jury in finding that there was no agreement that shut-off valves would be installed and that the only change agreed to with reference to the fuel system was to reroute the line from the fuel strainer to a high "T" fitting and thence down to each pump so that the fuel remaining in each line would prime the pump and that this change had been made in the pumps installed in plaintiff's plane. The evidence in support of defendant's contention that the accident resulted from an intervening cause at most raised a question of fact which the jury decided in favor of plaintiff.

There was introduced on behalf of defendant a number of letters and directives indicating that this style of pump was of questionable efficiency and safety. The purpose of introducing the correspondence apparently was to show that the defendant had been diligent in attempting to correct its deficiencies. A directive indicating that this pump though installed should be disassembled was in fact issued October 4, 1948, by the Civil Aeronautics Administration but the evidence is that it did not come to the notice of plaintiff until after the accident had occurred. This action of the Civil Aeronautics Adminis-

tration was itself some evidence of the pump's deficiencies. Pietrus v. Watkins Co., 229 Minn. 179, 38 N.W.2d 799. In any event, this would go to the question of contributory negligence which the court instructed was not a defense but should be considered by the jury only in mitigation of damages. Ordinarily the question of negligence is one of fact to be decided by a jury and if there is substantial evidence in support of that issue the finding of the jury can not be set aside.

In view of the evidence in this case which tended to establish defects in the construction of these pumps and the inadequate tests made as to their fitness it is idle to contend that there is no substantial evidence to sustain the jury's verdict. The judgment appealed from is therefore affirmed.